In re EVANS PRODUCTS COMPANY, et al., Debtors.

Bankruptcy Nos. 85–00512–BKC–TCB through 85–00519–BKC–TCB.

United States Bankruptcy Court, S.D. Florida.

Sept. 28, 1988.

Murphy, Weir & Butler, San Francisco, Cal., and Coll, Davidson, Carter, Smith, Salter & Barkett, Miami, Fla., for Evans Asset Holding Co.

Kimbrell & Hamann, P.A., Miami, Fla., for United Pacific Ins. Co.

ORDER REOPENING CASES

THOMAS C. BRITTON, Chief Judge.

United Pacific Insurance Company (United) moved on August 19 under 11 U.S.C. § 350(b) and B.R. 5010 to reopen these closed cases. It seeks modification of a permanent injunction to allow United to enforce a $2.3 million obligation allegedly assumed by Evans Asset Holding Company (EAHC), the liquidating corporation formed pursuant to the chapter 11 plan confirmed in these cases. EAHC has responded that the claim was barred effective November 19, 1986 by the Confirmation Order. The parties were heard August 25 and have briefed their respective contentions. I now conclude that United is entitled to the relief it seeks.

*Chronology*

The essential facts are not in dispute.

The debtor Evans Products Company and its subsidiaries engaged in a variety of businesses in a number of states, electing in many instances to meet their workers' compensation obligations by qualifying as self-insurers. Beginning in 1977, United issued surety bonds in various states to guarantee the self-insurer obligations of the debtors.

On March 11, 1985 Evans Products and its subsidiaries filed voluntary chapter 11 petitions in this court. United had actual notice of the bankruptcies and monitored the proceedings. It furnished no new bonds after bankruptcy.

On March 12, Evans Products as debtor in possession obtained permission from this court to continue and did continue discharging its obligations, and those of its subsidiaries, as a workers' compensation self-insurer with respect to both prepetition and postpetition claims. (CP 21). With respect to postpetition claims, Evans Products clearly had that authority by statute, §§ 1108, 1107(a), 363(c)(1), incident to its power to continue its "ordinary course of business." By inference, this court found

that the meeting of its prepetition obligations was also in its ordinary course of business.

The claims bar date for these cases was November 25, 1985. (CP 573). Though contingent and unliquidated claims are recognized in bankruptcy,[1] United never filed a claim and neither party requested estimation or allowance of United's claim.

On July 2, 1986, with an effective date of November 19, 1986, this court confirmed a Creditors' Modified Joint Plan of Reorganization (CP 972),[2] which created EAHC to liquidate the debtors' surplus assets and distribute the proceeds to creditors. (CP 1636). The plan contains no explicit provision for United or the debtors' prepetition workers' compensation liability.

In ¶ 14 of the Order, all of the debtors' executory contracts not explicitly rejected were assumed and assigned to EAHC with court approval. There is no reference to United nor workers' compensation claims among the rejected executory contracts. In ¶ 12 of the Order, all claims not provided for or assumed are discharged and their enforcement is enjoined.

On October 2, 1987, upon a finding that the plan had been substantially consummated, a final decree (CP 2970) was entered enjoining, except as provided in the plan, the enforcement of all claims which arose before the Decree.

During the seven-year interval between the filing of movant's first surety bond on behalf of the debtors until the effective date of the confirmed plan, Evans Products performed all obligations with respect to prepetition compensation claims, on behalf of all the debtors, continuously and without default. This included the acceptance, investigation, adjustment or litigation, and payment of all compensation claims, as well as the maintenance of records and the filing of reports required both by the movant/surety and by the several states.[3]

During the first 20 months after the effective date of the confirmed plan, EAHC continued to perform all the debtors' obligations with respect to the prepetition compensation claims, without interruption, in exactly the same way they had been performed during the preceding seven years. EAHC continued to retain the same three servicing agents. During this 20 months EAHC paid $1.2 million.

On July 22, 1988, for first time, EAHC notified United that:

> "Evans Asset Holding Company is concluding its activities and expects to cease operation shortly. Accordingly, it is Evans Asset Holding Company's intention to discontinue its procedure of administering the old Evans Products Company self-insured workers' compensation claims effective August 1, 1988." Letter 7–22–88, D'Appolonia to Alsup, ¶ 10.

In the conference which preceded the letter, the two parties had considered EAHC's "plan to advance additional amounts on behalf of the liquidated Evans Products Company, in conjunction with the settlement of the remaining unresolved self-insured workers' compensation cases."

EAHC's explanation for its abandonment of its earlier proposal was that:

> "Our decision to omit this item was based on our perception that further discussion of this concept was no longer relevant in light of the *discovery* and subsequent confirmation that Reliance United Pacific had issued bonds on behalf of Evans Products Company in a number of states and in amounts sufficient to cover both past and future self-insured workers' compensation liabilities." Letter 8–5–88, D'Appolonia to Bowen, ¶ 1. (Emphasis added).

---

**1.** § 502(c)(1) provides: "There shall be estimated for purpose of allowance under this section (1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case."

**2.** A subsequent modification at the confirmation hearing (CP 1543) is not pertinent here.

**3.** The investigation, adjustment and litigation of the claims were conducted through three independent servicing agents, Frank S. James & Co., Crawford & Co., and Total Compensation Services retained by Evans Products.

In fact, however, EAHC's attorney knew at least 21 months earlier that United had posted a self-insurer's surety bond for the debtors with the State of Washington. Letter 11–6–86. Irving to Mally, ¶ 3. This date precedes the creation of EAHC and the effective date of the confirmed plan. Counsel for EAHC knew and the sophisticated staff of EAHC either knew or should have known at all relevant times that all states require some form of security for self-insured compensation programs. The excuse offered by EAHC for its abrupt, unilateral disavowal of its obligation is baseless.

Movant estimates that its present outstanding liability on its surety bonds in nine states [4] is $2.3 million. There are 62 pending prepetition claims.

### Reopening The Cases

The parties agree that the court has discretion to reopen these cases "for cause". § 350(b), B.R. 5010; *In re Hawkins,* 727 F.2d 324, 326 (4th Cir.1984). If, as EAHC argues, United's claim is time-barred and enjoined by the final decree, no cause exists to reopen the case. However, if as United argues, EAHC owes a new indebtedness to United under the confirmed plan, it is entitled to recover that claim. Because the parties differ as to the effect of the confirmed plan, these cases are reopened to resolve that difference.

### The Issue

The pivotal and, I believe, only issue is whether the debtors' pre-confirmation obligation to United was "executory" as that term is used in § 365(a).[5] If it was executory, it was assumed by EAHC. If it was not, it is time-barred and discharged.

### The Debtors' Contractual Obligations To United

The obligations of the debtors to their surety are specified in a three-page, 19 ¶ form contract, the Continuing Agreement of Indemnity—Contractor's Form. The parties' conduct during the seven years administration by Evans Products and the 20 months subsequent administration by EAHC (which were identical) accurately reflected the terms of the contractual agreement between the parties. I am aware of no disagreement as to their respective obligations.

The debtors' obligation to United is to pay the stipulated premium for the surety bonds, and to indemnify and hold its surety harmless. If United pays any obligee under the bond, United as a surety is also subrogated to the rights of the obligee it pays.

In compliance with the hold harmless obligation, Evans Products and EAHC, in addition to making all required payments, recognized their obligation to also maintain necessary records and file required reports, and accept, investigate, and adjust or litigate all claims.

As to United's outstanding surety bonds in nine states, the principal remains obligated or potentially obligated to continue the performance of each of these duties.

### Executory Contracts

Neither the parties nor I have found a holding as to whether the contract between a surety and its principal with respect to an outstanding surety bond is executory.

As stated in *NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 522 n. 6, 104 S.Ct. 1188, 1194 n. 6, 79 L.Ed.2d 482 (1983):

"The Bankruptcy Code furnishes no express definition of an executory contract, see 11 U.S.C. § 365(a) (1982 ed), but the legislative history of § 365(a) indicates that Congress intended the term to mean *a contract 'on which performance remains due to some extent on both sides.'* ... We reject the argument of

---

**4.** Illinois, Michigan, Minnesota, Montana, New York, Oregon, Pennsylvania, Washington, Wisconsin.

**5.** § 365(a) provides that: "the trustee, subject to the court's approval, may assume or reject any executory contract". With exceptions not perti-

nent here, the trustee may assign assumed contracts. § 1107(a) provides that: "a debtor in possession shall have all the rights ... and powers, and shall perform all the functions and duties ... of a trustee".

amicus United Mine Workers of America that a collective-bargaining agreement is not an executory contract within the meaning of § 365(a). Under their labor contract *both Bildisco and the Union had reciprocal obligations, and at any point during the life of the contract, performance was due by both parties.*" (Emphasis added).

The only guidance offered to date by our Circuit is to the same effect. It has adopted the definition in Black's Law Dictionary (5th ed. 1979):

"A contract that has not as yet been fully completed or performed. A contract the obligation (performance) of which relates to the future." *Matter of Brada Miller Freight System, Inc.,* 702 F.2d 890, 894 n. 10 (11th Cir.1983).

By either definition, the contract between the debtors and United was clearly executory.

The Sixth Circuit has noted aptly that: "As many courts and commentators have pointed out, the phrase is meaningless; once a contract ceases being executory, for all practical purposes, it ceases to exist." *In re Jolly,* 574 F.2d 349, 350 (6th Cir.), *cert. denied,* 439 U.S. 929, 99 S.Ct. 316, 58 L.Ed.2d 322 (1978).

The problem courts face is determining which contracts Congress intended to exclude as *not* executory. We need not enter that thicket here.[6] By any test I have seen, the contractual obligations of the debtors and United to each other were clearly executory when the petition was filed, and when the plan was confirmed in this case, and they remain executory today.

*Conclusion*

These cases are reopened to resolve the foregoing issue.

I anticipate that neither party will require the intervention of this nor any other court to provide for EAHC's continued assumption of these contractual obligations.

---

6. I am persuaded by and have followed the analysis of the Sixth Circuit in *In re Jolly,* 574 F.2d at 350–51. A number of other bankruptcy courts, perhaps a majority, have applied a similar analysis. Judge Cristol in *In re Arrow Air,*

If not, and at EAHC's election, this court will hear an application under § 502(c)(1).

United may enforce, in any appropriate forum, EAHC's assumption of the debtors' contractual obligations to the extent that they have been breached, or if and when they are breached. United requires no further order of this court to do so.

*Inc.,* 60 B.R. 117, 121–22 (Bankr.S.D.Fla.1986) and the cases he has cited are in this category, though they have not cited *Jolly,* which applied a virtually identical statutory predecessor of our present § 365(a).