**In re GOVERNMENT SECURITIES CORPORATION, Debtor.**

**John R. CAMP, Jr., Trustee, Plaintiff,**

v.

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Defendant.**

**Bankruptcy Nos. 87–0910–C–KEHOE, 87–0245–BKC–AJC–A.**
**Adv. No. 88–0427–BKC–AJC–A.**

United States Bankruptcy Court, S.D. Florida.

March 15, 1989.

**344**

Carl K. Hoffman, Kimbrell & Hamann, P.A., Miami, Fla., for defendant.

Neal B. Shniderman, Blackwell, Walker, Fascell & Hoehl, Miami, Fla., for plaintiff.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A. JAY CRISTOL, Bankruptcy Judge.

On February 1, 1989, the Court conducted a trial without a jury in the captioned proceeding. The Court has considered all of the evidence presented, facts admitted in the pleadings, and the argument of counsel. In accordance with Rule 7052 of the Bankruptcy Rules and Rule 52 of the Federal Rules of Civil Procedure, the Court makes the following findings of fact, conclusions of law, and Order for Judgment.[1]

### FINDINGS OF FACT

1. National Union Fire Insurance Company of Pittsburgh, PA., New York, New York (hereafter "NUFIC") issued a Securities Dealer Blanket Bond to Government Securities Corporation (hereafter "GSC"), which became effective on February 1, 1987 and was scheduled to expire on November 1, 1987. Amended Complaint ¶ 5; NUFIC Answer ¶ 3. The premium for the bond period, i.e., February 1, 1987 through November 1, 1987 had been paid prior to the issuance of the bond. Trial Tr. at 31, 58.

2. On May 12, 1987, the Honorable Alcee L. Hastings, as the Duty Judge, entered an order commencing the liquidation of GSC under the Securities Investor Protection Act of 1970 as amended (S.I.P.A.), 15 U.S.C. §§ 78aaa *et seq.* in Case No. 87–910–CIV–KEHOE (S.D.Fla.). Amended Complaint ¶ 3; NUFIC Answer ¶ 3.

3. Under the terms of Judge Hastings' Order, John R. Camp, Jr. was appointed Trustee for the liquidation of GSC and the liquidation proceeding was removed to this Court. *Id;* Trial Tr. at 36.

4. By letter dated June 2, 1987, the Trustee acting on behalf of GSC, the insured, put NUFIC on notice of a possible loss under the bond. Trial Tr. at 37, 39–40, 44, 56; Plaintiff's Ex. 1. The Trustee's letter, which describes and attaches a copy of Judge Hastings' Order of May 12, 1987, states in part:

> In the course of our review of the files of GSC, we have determined that your firm issued a Securities Dealer Blanket Bond, which became effective on February 1, 1987. This letter is sent in accordance

---

[1]. Any finding of fact incorrectly denominated as a conclusion of law shall be deemed a finding of fact; any conclusion of law incorrectly denominated as a finding of fact shall be deemed a conclusion of law.

with the terms of Section 4 of the Bond, and is designed to serve as notice of a possible loss covered by that bond. Plaintiff's Exhibit 1. The Trustee further advised NUFIC that his investigation would continue and he desired the maximum period of time under the bond for submission of affirmative proof of loss. *Id.* In so doing, the Trustee clearly manifested his intent to seek all available coverage afforded by the bond.

5. In response to the Trustee's letter, counsel for NUFIC advised the Trustee that it had been retained and further communications should be directed to counsel. Trial Tr. at 37–38.

6. Counsel for NUFIC thereafter conducted an investigation on behalf of NUFIC into the possible loss, and NUFIC's investigation was substantially completed on or about July 2, 1987. Trial Tr. at 30, 60.

7. In the normal course of business, NUFIC provides a form to the insured to complete as a part of the filing of a proof of loss with NUFIC. Trial Tr. at 66. Notwithstanding repeated efforts to obtain NUFIC's assistance in the filing of the proof of loss and to determine NUFIC's procedures for filing the proof of loss, NUFIC did not provide the forms to the Trustee or his counsel. Trial Tr. at 66–67.

8. Notwithstanding the Trustee's actions, NUFIC has refused to provide coverage under the bond claiming that the bond was terminated upon appointment of the Trustee on May 12, 1987, by virtue of Section 12(c) of the bond, the so-called automatic termination provision. Amended Complaint ¶ 7; NUFIC Answer ¶ 3; NUFIC Affirmative Defense ¶ 4. This section of the bond provides:

> Section 12. This bond shall be deemed terminated or canceled as an entirety:
> 
> \* \* \* \* \* \*
> 
> (c) immediately upon the taking over of the Insured by a receiver or other liquidator or by State or Federal officials,....

*Id.* The Securities Dealer Blanket Bond issued by NUFIC to GSC provides coverage, *inter alia,* for "loss sustained by the Insured at any time but discovered during the Bond Period...." Amended Complaint, Exhibit A (opening paragraph). NUFIC takes the position that the bond terminated under Section 12(c) of the bond upon appointment of the Trustee. Thus, NUFIC argues any discovery occurred after the bond period ceased and no coverage existed.

9. Section 12 of the bond also provides, in relevant part, that:

> This bond shall be deemed terminated or cancelled as to any Employee: (a) as soon as the Insured shall learn of any dishonest or fraudulent act on the part of such Employee....

10. Under the terms of the bond, NUFIC has an obligation to pay claims made under a bond within 48 hours of a decision that the claim is clear and undisputed. Trial Tr. at 27–28. The presence of the automatic termination provision, i.e., Section 12(c) of the bond, constitutes the principal basis for NUFIC's claim that the Trustee's claim is not clear and undisputed. *Id.* at 64.

11. By virtue of NUFIC's position on Section 12(c) of the bond, the Trustee filed this adversary proceeding. The Trustee relies on Section 541(c)(1)(B) of the Code, the so called *anti-ipso facto* provision, arguing:

> The basis for the declaratory relief sought by the trustee is simple. The bond and the trustee's rights under it are property of the estate, [f/n omitted] and § 541(c)(1)(b) of the Bankruptcy Code specifically invalidates bankruptcy termination provisions which impair the trustee's property rights. [f/n omitted].

Plaintiff's Response to Defendant's Motion for Stay of Proceedings, Motion for Determination of Nature of Proceedings, Motion to Dismiss and Motion to Abstain at 14. *See also* Trial Tr. at 5.

12. In response to the Amended Complaint, NUFIC contends: a) the bond constitutes an executory contract within the meaning of Section 365 of the Bankruptcy Code; b) the Trustee did not assume the contract; c) the contract, therefore, was rejected and deemed breached under Sec-

tion 365(g) prior to the entry of Judge Hastings' Order of May 12, 1987; and d) no bond, therefore, existed after May 12, 1987 to afford coverage for a discovery made in June, 1987.

13. The validity of Section 12(c) of the Bond must be assessed under Section 541(c)(1)(B) if the Trustee's position is adopted. Moreover, even if Section 365, pertaining to executory contracts, is applicable, Section 12(c) of the Bond must be considered under Section 365(e)(1) of the Code. As stated by this Court previously, under both provisions, Section 12(c) must fall. *See* Trial Tr. at 3–4, 71.

14. In support of its position that the contract was executory as of Monday, July 13, 1987, NUFIC offered the testimony of John J. Morrissey, bond claims counsel for NUFIC and its parent American International Group. Trial Tr. at 23–24, 47.

15. Mr. Morrissey is an attorney admitted to practice in New York. He is not admitted to practice in Florida, whose law controls the rights and obligations of the parties to the bond, except to the extent bankruptcy law applies. Mr. Morrissey is not and does not claim to be an expert on Florida law and its applicability to the bond issued by NUFIC. Mr. Morrissey testified solely on the industry's analysis of the duties imposed by the bond on NUFIC and the insured.

16. Mr. Morrissey testified that the industry and NUFIC view the bond as imposing four principal duties—two on the insured and two on the insurer. The insured must notify NUFIC of claims and advise NUFIC if the insured acquires another entity or is acquired by another entity. The insurer (NUFIC) has an obligation to investigate and to pay on a claim or deny the claim and explain the basis for the denial. Trial Tr. at 24–25, 30, 52, 54, 55. Technical requirements under the bond, which have a less important role, include the duty by the insured to cooperate, to file proof of loss, and avoid prejudicing NUFIC's subrogation rights. Trial Tr. at 52–53, 59. Finally, the premium must be paid. *Id.* at 52, 58.

17. Mr. Morrissey admits and the Court finds that the premium was paid prior to the effective date of the bond, i.e., on or before February 1, 1987. Trial Tr. at 31, 58. By virtue of the May 12, 1987 Order placing GSC in liquidation, no obligation existed to advise NUFIC of an acquisition at that point. Trial Tr. at 25, 56. The Trustee's letter of June 2, 1987 (Plaintiff's Ex. 1), which was received shortly thereafter, satisfied the obligation to notify NUFIC of a possible loss. Trial Tr. at 56–57. The Trustee also satisfied any obligation to cooperate with NUFIC by July 2, 1987. Trial Tr. at 31, 69. Mr. Morrissey admits that the Trustee had satisfied all of his principal duties, including providing notice of a possible loss to NUFIC, and even some technical requirements of the bond by July 2, 1987. Trial Tr. at 27, 57–58.

18. In direct response to the Trustee's letter of June 2, 1987, and with the understanding that the Trustee sought to invoke the coverage of the bond, NUFIC initiated an investigation of the claim which was substantially completed by July 2, 1987.

19. By July 2, 1987, therefore, all of the principal obligations of the Trustee had been satisfied and the only obligation remaining for NUFIC was payment or denial of the claim.

20. The Order placing GSC in liquidation was entered on May 12, 1987. The Trustee did not file a motion to assume the bond under Section 365 of the Code, if it were an executory contract, prior to Monday July 13, 1987. For the reasons set forth in the findings of fact made above, and the conclusions of law reached below, the bond was not an executory contract on May 12, 1987, and even if it were executory on that date, it ceased to be executory by July 13, 1987. Thus, there was nothing to be assumed or rejected.

### CONCLUSIONS OF LAW

1. The trustee is entitled to the declaratory relief he seeks. It is beyond cavil that the Trustee's rights under the bond constitute and constituted property of the estate under Section 541 of the Code and the automatic termination provision contained in Section 12(c) of the bond is and

was ineffective by virtue of Section 541(c)(1)(B) notwithstanding the commencement of the liquidation of GSC under S.I. P.A. and the appointment of Mr. Camp as Trustee. The rights, powers, and protection given to a bankruptcy trustee by the Code are adopted by reference into S.I. P.A., 15 U.S.C. Sections 78fff(b), 78fff–1(a). Fidelity bonds, like insurance policies, are among those property interests of the estate protected by the Code's anti-termination provision contained in Section 541(c)(1)(B). *See In re Gulf Tampa Drydock Co.,* 49 B.R. 154 (Bankr.M.D.Fla. 1985).

■ 2. The statutory basis of NUFIC's contention that the Securities Dealer Blanket Bond was an executory contract is 11 U.S.C. Section 365, the Bankruptcy Code provision that deals with executory contracts and unexpired leases.

3. With exceptions not relevant here, section 365(a) provides that the trustee may assume or reject any executory contract or unexpired lease of the debtor. Pursuant to section 365(d)(1), the trustee has sixty days from the order for relief within which to assume or reject an executory contract. Any contract not assumed within that period is deemed rejected. Significantly, under section 365(g), the rejection of an executory contract by the debtor constitutes a breach of such contract and gives rise to a claim by the non-bankrupt party against the debtor's estate.

4. The Bankruptcy Code does not define an executory contract. The legislative history to section 365 states that though there is no precise definition of what contracts are executory, it generally includes contracts on which performance remains due to some extent on both sides. H.R.Rep. No. 595, 95th Cong., 1st Sess. 347, repr. in 1978 U.S.Code Cong. & Admin.News 5787, 6303. In determining whether a contract is executory, the courts have frequently followed the definition of Professor Countryman who defined an executory contract as one: "under which the obligation of both the bankrupt and the other party to the contract are so far unperfected that the failure of either to complete the perform-

ance would constitute a material breach excusing the performance of the other." Countryman, *Executory Contracts in Bankruptcy,* 57 Minn.L.Rev. 439, 460 (1973) *quoted in In re Arrow Air, Inc.,* 60 B.R. 117, 120 (Bankr.S.D.Fla.1986); *In re Charter Co.,* 52 B.R. 267, 270 (Bankr.M.D. Fla.1985); *In re B. Siegel Co.,* 51 B.R. 159, 161 (Bankr.E.D.Mich.1985).

5. By logical necessity the above-cited definition of executory contract must contemplate that the performance that remains due by the debtor is such that its failure to perform would be a breach of contract which would give rise to a claim by the non-bankrupt against the debtor's estate. *See, e.g., Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc.,* 756 F.2d 1043 (Bankr. 4th Cir.1985), *cert. denied,* 475 U.S. 1057, 106 S.Ct. 1285, 89 L.Ed.2d 592 (1986) (holding that technology licensing agreement was an executory contract where the debtor owed the non-bankrupt continuing duties, *inter alia,* to notify of patent infringement suits and other uses of or licensing of a certain process and the non-bankrupt owed the debtor reciprocal duties of accounting for and paying royalties for use of the process); *In re Sun City Investments,* 89 B.R. 245 (Bankr.M.D.Fla. 1988) (holding that contract requiring debtor to deliver certain vehicles and convey title to certain real property to non-debtor and requiring the non-debtor to obtain a substitute mortgage on certain real property was an executory-contract); *In re Arrow Air, Inc.,* 60 B.R. 117 (Bankr.S.D.Fla. 1986) (holding that contract that imposed upon bankrupt airline the obligation to use certain types of aircraft while operating at port authority airports and upon port authority the obligation to provide the airline with access to its airports and airport services was executory).

6. A second approach to defining executory contracts is the functional approach. *See In re Arrow Air,* 60 B.R. at 121. Under the functional approach, executory contracts are measured not by mutuality of commitments but by the nature of the parties and the goals of reorganization. *See In Re Arrow Air,* 60 B.R. at 122, *citing In re Booth,* 19 B.R. 53, 56 (Bankr.D.Utah

1982). Thus, under the functional approach, the court considers the purpose behind allowing the debtor or trustee to assume or reject a contract in determining whether or not it is executory. *Id.*[2]

7. Whether this Court adopts the Countryman definition of executory contracts or applies the functional approach to defining executory contracts in this case, it is clear that the Securities Dealer Blanket Bond issued by NUFIC to GSC was not an executory contract within the contemplation of the Bankruptcy Code.

8. The bond was not an executory contract under the Countryman definition because there were no obligations under the blanket bond on GSC's part such that its failure to perform would have been a material breach of the contract excusing NUFIC's performance and giving rise to a claim by NUFIC against the estate. It is recognized that, under Florida law, a fidelity bond is considered an insurance contract and that, in the bankruptcy context, insurance contracts are *generally* considered executory contracts. *See In re Pester Refining Co.*, 58 B.R. 189 (Bankr.S.D.Iowa 1985); *In re B. Siegel Co.*, 51 B.R. 159 (Bankr.E. D.Mich.1985). Significantly, however, the sole basis for the holding that a contract

for insurance is an executory contract has been the fact that the bankrupt insured had a continuing obligation to make premium payments under the contract. *See, e.g., Pester*, 58 B.R. at 191; *B. Siegel*, 51 B.R. at 161. The holding of the cited authorities is inapplicable here because, prior to the bankruptcy, GSC made full payment and NUFIC issued the bond. Thus, the coverage that was the object of the contract had been completely obtained by GSC prior to the bankruptcy. *See In Re Placid Oil Co.*, 72 B.R. 135 (Bankr.N.D.Tex.1987).[3]

9. The only remaining duties on GSC's part, which the Trustee satisfied, were to notify NUFIC of claims under the contract and to notify NUFIC if it acquired or was acquired by another entity. The former duty is a condition precedent to NUFIC's payment for GSC's losses. *See Bankers Ins. Co. v. Macias*, 475 So.2d 1216, 1218 (Fla.1985); *Independent Fire Ins. Co. v. NCNB Nat'l Bank*, 517 So.2d 59, 64 (Fla. 1st DCA 1897). The latter, to the extent that it can be construed as requiring notice of an increase in hazard, is a condition subsequent to the contract. *See Independent Fire Ins.*, 517 So.2d at 64. Thus, GSC's failure to comply could not have

---

**2.** The functional approach to defining executory contracts is not entirely separate and distinct from the above-cited Countryman definition and is, in fact, actually suggested by Professor Countryman. Professor Countryman suggested that executory contracts should be defined in light of the purpose for which the trustee is given the power to assume or reject, which is to benefit the estate. Countryman, *Executory Contracts in Bankruptcy*, 57 Minn.L.Rev. 439, 450 (1973).

**3.** NUFIC's reliance on *In re Evans Products Co.*, 91 B.R. 1003 (Bankr.S.D.Fla.1988) in support of its argument that the bond in this case was an executory contract is misplaced for two reasons. First, the policy underlying the court's holding that the surety bond in *Evans* was an executory contract does not apply here. In *Evans*, the debtor needed the coverage afforded by the surety bond in order to continue its operation, operated for a period of time by virtue of the benefit it received, and then sought to avoid paying the premium for the bond. The court's holding in *Evans* in essence indicated that it would be inequitable to allow a debtor to receive the benefits of a contract without performing its duty of payment. That reasoning is not

applicable in this case because, as set forth herein, GSC had made full payment for its coverage prior to bankruptcy and, therefore, does not seek to avoid any duty of payment. In fact, it is NUFIC that seeks to avoid its duty of payment for GSC's losses under the bond.

Second, there are significant differences between a surety bond, such as the one in *Evans,* and the fidelity bond issued by NUFIC which make *Evans* inapplicable here. A fidelity bond provides coverage for the insured against losses suffered by the insured as the result of the infidelity of its employees. Under a fidelity bond, the insured's primary duty is payment of the premiums. A surety bond, on the other hand, provides coverage to third parties against losses they suffer as a result of the principal's conduct. The surety's payment for losses sustained by third parties creates obligation on the part of the principal to reimburse the surety for its payment. Thus, *Evans* is analogous to the cited insurance cases where the courts have held that the insured's continuing obligation to make premium payments renders the contract executary. Those authorities establish that where, as here, the insured had no obligation to make any payments, the contract is not executory.

been a material breach giving rise to a claim by NUFIC against the estate.

10. Under the functional approach to defining executory contracts it is clear that the blanket bond issued by NUFIC was not an executory contract.

■ 11. In applying the functional approach, it is necessary to work backward, proceeding from an examination of the goals rejection is expected to accomplish. *See In re Jolly,* 574 F.2d 349, 351 (Bankr. 6th Cir.), *cert. denied,* 439 U.S. 929, 99 S.Ct. 316, 58 L.Ed.2d 322 (1978). If those purposes have already been accomplished or if they cannot be accomplished through rejection, then the contract is not executory within the meaning of the Bankruptcy Code. *Id.*

12. The purpose underlying the provision allowing the trustee or the debtor to assume or reject a contract is to benefit the estate by providing a mechanism through which severe financial burdens may be lifted. *See In re Herbert,* 806 F.2d 889, 893 (9th Cir.1986) *citing* 2 *Collier on Bankruptcy* ¶ 365.01 (15th ed. 1986); *In Re Central Florida Fuels, Inc.,* 89 B.R. 242, 244 (Bankr.M.D.Fla.1988); *In re Arrow Air,* 60 B.R. at 122. This purpose could not possibly have been accomplished through rejection of the contract in this case. In fact, if the contract had been rejected, precisely the opposite would have happened. GSC, as the insured, would have given up valuable, bargained-for protection against losses. The only possible benefit to be derived from GSC's rejection of the contract would have been to NUFIC. If the Court determined that the contract was an executory contract, NUFIC would be relieved of all liability on a blanket bond for which it received full payment prior to the bankruptcy. In asserting that the contract was executory, NUFIC, the non-bankrupt, is attempting to utilize to its advantage a statute designed to inure to the benefit of bankrupt or the bankruptcy estate. In effect, NUFIC is asking the Court to use the trustee's avoidance power against the trustee. Such a result in this context is not contemplated by the Bankruptcy Code.

*See In re A.H. Robins Co., Inc.,* 68 B.R. 705, 707 (Bankr.E.D.Va.1986).

· 13. Accordingly, this Court concludes that the Securities Dealer Blanket Bond issued by NUFIC to GSC is not an executory contract that was capable of being assumed or rejected by the trustee. The trustee's failure to assume the contract within the period prescribed by the Code will, therefore, not be deemed a rejection of the contract that relieves NUFIC of its obligation to provide coverage for the possible loss reported by the trustee on June 2, 1987.

14. Even if this Court were to determine that the bond was an executory contract at the time of the commencement of the bankruptcy proceedings, NUFIC would not be relieved of its obligation to provide coverage for the possible loss reported on June 2, 1987.

■ 15. The critical date for determining the executory nature of a contract is the date on which the bankruptcy court considers the debtor's application to assume or reject the contract. *In re Pesce Baking Co., Inc.,* 43 B.R. 949, 957 (Bankr. N.D.Ohio 1984), *citing Gloria Mfg. v. International Ladies Garment Workers,* 734 F.2d 1020 (4th Cir.1984), *In re Total Transp. Serv., Inc.,* 37 B.R. 904, 11 B.C.D. 872 (Bankr.S.C.Ohio 1984). Although a contract may be executory on the date the bankruptcy petition is filed, *see In re Pesce,* 43 B.R. ·at 457, circumstances may arise which render the contract no longer executory. For example, if the agreement expires of its own terms before the bankruptcy court considers the application to assume or reject the contract, the application becomes moot as there is no longer anything to assume or reject. *Id.*

16. Thus, if the bond in this case were executory at the time of the commencement of the bankruptcy proceedings, but expired of its own terms (i.e., the expiration/renewal date was reached) a few days later, there would have been nothing for the trustee to assume or reject on the sixtieth day and any motion for assumption or rejection would have been deemed moot.

The same analysis is true in the instant case.

17. In this case, the bond specifically provided that it shall be deemed terminated or cancelled as to any employee as soon as the insured shall learn of any dishonest or fraudulent act on the part of such employee.[4] The trustee reported the possible loss in June, 1987. As of the date of discovery, the bond, by its own terms, was terminated or cancelled as to those employees. Thus, on the sixtieth day, i.e., July 13, 1987, any application to assume the contract would have been deemed moot as to coverage for the employees whose acts gave rise to the loss under the bond.

18. To the extent Section 365 had some applicability, Section 12(c) of the bond is and was ineffective under Section 365(e)(1) notwithstanding the commencement of the liquidation of GSC under S.I.P.A. and the appointment of Mr. Camp as Trustee. Insurance policies are among those property interests of the estate protected by the Code's anti-termination provision. *See e.g., In re Garnas*, 38 B.R. 221 (Bankr.D.N.D.1984). The rights and powers accorded to the trustee by the Code are adopted by reference into S.I.P.A., 15 U.S.C. §§ 78fff(b), 78fff–1(a). Thus, the trustee in this case is entitled to the protection afforded by Section 365(e)(1) of the Code.[5]

19. Judgment shall be entered accordingly.

---

4. This automatic termination provision, unlike the provision in Section 12(c) of the bond, remained unaffected by Section 541(c)(1)(B) or 365(e)(1) because it was not conditioned on insolvency of the debtor, commencement of the liquidation, or the appointment of a Trustee.

5. By virtue of the foregoing findings of fact and conclusions of law, Plaintiff's Motion for Judgment on the Pleadings is rendered moot.