**In re GOVERNMENT SECURITIES CORP., Debtor.**

**John R. CAMP, Jr., Trustee, and the Securities Investor Protection Corp. Appellees,**

v.

**NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH, PA, Appellant.**

**No. 89–1211–CIV.**

United States District Court,
S.D. Florida,
Miami Division.

March 16, 1990.

Neal B. Shniderman, Mark T. Kobelinski, Miami, Fla., for appellees.

Theodore H. Focht, Josephine Wang, Washington, D.C., for Securities Investor Protection Corp.

Carl K. Hoffmann, Miami, Fla., for appellant.

## MEMORANDUM OPINION

SPELLMAN, District Judge.

### ORDER AFFIRMING BANKRUPTCY COURT

THIS CAUSE comes before the Court upon the appeal of National Union Fire Insurance Company of Pittsburgh, Pennsylvania (hereinafter "NUFIC"), from a decision of the Bankruptcy Court for the Southern District of Florida, in a declaratory judgment action brought by John R. Camp, Jr., as Trustee for the liquidation of Government Securities Corporation (hereinafter "GSC") seeking a determination of the estate's rights under a fidelity bond in light of 11 U.S.C. Section 541(c)(1)(B).

### BASIS OF APPELLATE JURISDICTION

This Court has jurisdiction of this appeal pursuant to 28 U.S.C. Section 158(a).

### STANDARD OF APPELLATE REVIEW

■ On an appeal from a proceeding pursuant to the Securities Investor Protection Act (hereinafter "SIPA") a district court is to conduct a *de novo* review of the bankruptcy court's conclusions of law. *In re Stalvey & Assocs.*, 750 F.2d 464, 468 (5th Cir.1985). However, the bankruptcy court's "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Bankr.R. 8013.

### BACKGROUND

On February 1, 1987, NUFIC issued a Securities Dealer Blanket Bond No. 959–9000 to GSC. Coverage on the bond was to commence on February 1, 1987 and continue through November 1, 1987. GSC paid the premium on the bond in full prior to its issuance.

On an application and complaint by the Securities Investor Protection Corporation (hereinafter "SIPC"), this Court (per Hastings, J.) entered an order on May 12, 1987, pursuant to 15 U.S.C. Section 78eee(b), placing GSC, a broker-dealer in U.S. government securities, into liquidation under SIPA and appointing John R. Camp, Jr., Esq., as Trustee to administer the liquidation of GSC. This Court (per Hastings, J.) ordered the case removed to the Bankruptcy Court for the Southern District of Florida (Cristol, J.).

On June 2, 1987, the Trustee provided written notice to NUFIC of a possible loss under the bond. Thereafter, on July 1, 1987, the Trustee brought an adversary proceeding against two employees of GSC, alleging theft of funds entrusted to them by customers of GSC. The Trustee advised NUFIC of this suit and sought information as to the proper manner of filing a loss claim under the bond.

In the normal course of business, NUFIC provides a form for its insureds to complete as part of filing a proof of loss. Despite repeated requests by the Trustee, NUFIC failed to provide such forms. NUFIC remained silent until December 23, 1987, when it informed the Trustee that coverage was denied by virtue of Section 12(c), the automatic termination clause set forth in the bond, which reads in pertinent part:

This bond shall be deemed terminated or cancelled as an entirety:

(c) immediately upon the taking over. of the insured by a receiver or other liquidator or by State or Federal officials.

As a result of NUFIC's denial of coverage, the Trustee initiated this adversary proceeding, seeking a declaration of the parties' rights under the bond in light of 11 U.S.C. Section 541(c)(1)(B), which invalidates automatic termination provisions.

NUFIC argued that Section 541 of the Bankruptcy Code is inapplicable to SIPA liquidation proceedings based upon the plain language of that section. NUFIC maintained that this language limits application of that section to cases arising under Title 11 (i.e. straight bankruptcy cases). In addition, NUFIC argued that the fidelity bond in question was an executory contract, and therefore subject to 11 U.S.C. Section 365(d)(1), which requires a trustee to assume or reject executory contracts within 60 days of the filing of a petition for relief in bankruptcy. NUFIC maintains that because the Trustee failed to assume the so-called executory contract by July 13, 1987 (60 days after the filing of the petition for relief), it was deemed rejected, relieving NUFIC of any liability under the bond.

On November 15, 1988, the bankruptcy court held that the adversary action was a "core proceeding" and that "[r]elevant portions of the Bankruptcy Code which prevent an automatic termination or limitation of the estate's property rights upon the filing of a bankruptcy proceeding or appointment of a trustee are applicable in this adversary matter filed in a SIPA proceeding." *In re Government Sec. Corp.*, 90 B.R. 539 (Bankr.S.D.Fla.1988) (Order on National Union's: Motion for Stay of Proceedings; Motion to Dismiss Amended Complaint; Motion for Determination of Nature of Proceedings; and Motion to Abstain). On March 15, 1989, the bankruptcy court issued its findings of fact and conclusions of law, 101 BR 343. The court determined that: a) Section 541(c)(1)(B) of the Bankruptcy Code was applicable to SIPA liquidation proceedings by virtue of 15 U.S.C. Section 78fff–1(a) which provides that "a trustee shall be vested with the same powers and title with respect to the debtor and the property of the debtor as a trustee in a case under Title 11;" b) an automatic termination provision of the fidelity bond NUFIC issued to GSC was void and unenforceable against the Trustee by virtue of 11 U.S.C. Section 541(c)(1)(B); c) the bond was not an executory contract for purposes of 11 U.S.C. Section 365(d)(1), and therefore, the Trustee was not obligated to assume the contract by July 13, 1987, the date upon which an executory contract must have been assumed by the Trustee in order to avoid being deemed rejected pursuant to 11 U.S.C. Section 365(d)(1); and d) even if the bond were executory on May 12, 1987 (the date which the petition for relief was filed), it ceased to be executory by July 13, 1987. Thereafter, the bankruptcy court issued its final judgment from which Appellant NUFIC appeals the following holdings: a) that the adversary proceeding was a "core" matter giving the bankruptcy court jurisdiction to hear and determine the proceeding pursuant to 28 U.S.C. Section 157(b)(1); b) that 11 U.S.C. Section 541(c)(1)(B) applies to SIPA liquidation proceedings, thereby invalidating the automatic termination provision contained in Section 12(c) of the bond issued by NUFIC to GSC; and c) that the bond was not an executory contract which the Trustee was required to assume or reject within sixty days.

## DISCUSSION

### Nature of Proceeding

First, this Court finds that NUFIC's position that the instant action was a "non-core" proceeding to be without merit. Core proceedings are those matters which "arise under Title 11" or that "arise in a case under Title 11." 28 U.S.C. Section

157(b)(1). Moreover, 28 U.S.C. Section 157(b)(2)(O) states that core proceedings include, but are not limited to, "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship...."

■ Non-core related proceedings are those matters that are traditional state law actions, not made subject to a federal rule or decision, but that are related, though only peripherally, to a pending bankruptcy case. Related matters are those non-core proceedings "that in the absence of ... bankruptcy, could have been brought in a district court or a state court." *In re Colorado Energy Supply*, 728 F.2d 1283, 1286 (10th Cir.1984).

■ 11 U.S.C. Section 541(c)(1)(B) creates substantive rights unknown at state law. Although GSC's right to recovery was pursuant to the bond, a legal right created under state law, the Trustee's ability to preserve rights under the bond exists solely under the Bankruptcy Code. Indeed, operation of Section 12(c) of the bond, the automatic termination provision, would not be an issue but for the existence of the Bankruptcy Code provision which precludes the operation of such clauses upon "insolvency, financial condition of debtor or on the commencement of a case under this title." 11 U.S.C. Section 541(c)(1)(B). As the Trustee correctly argues, this is not simply a state law contract action which, had there been no bankruptcy, could have proceeded in a state court. *In re Wood*, 825 F.2d 90, 97 (5th Cir.1987).

Application of Section 541(c)(1)(B) could not be contemplated outside of bankruptcy, and the controversy involving payment on the bond affects the liquidation of debtor's assets. Accordingly, this matter comes within the ambit of "core" proceedings, giving the bankruptcy court subject matter jurisdiction to hear and determine the instant case.

*Application of 11 U.S.C. Section 541(c)(1)(B) to SIPA Liquidation Proceedings*

■ Secondly, this Court finds that 11 U.S.C. Section 541(c)(1)(B) applies to SIPA liquidation proceedings, thereby invalidating Section 12(c), the automatic termination clause of the bond NUFIC issued to GSC.

The stated purposes of a SIPA liquidation proceedings are:

(1)(B) To distribute customer property and otherwise satisfy net equity claims of customers to the extent provided in this section.

＊　　＊　　＊　　＊　　＊　　＊

(4) To liquidate the business of the debtor.

15 U.S.C. Section 78fff(a).

15 U.S.C. Section 78fff(b) provides:

To the extent consistent with the provisions of this chapter, a liquidation proceeding shall be conducted in accordance with, and as though it were being conducted under, chapters 1, 3 and 5, and subchapters I and II of Chapter 7 of Title 11....

Under 11 U.S.C. Section 541(c)(1)(B):

... an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section, notwithstanding any provision—

B) that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title, or on the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement, and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property.

This Court finds that the application of 11 U.S.C. Section 541(c)(1)(B) is consistent with the purposes of SIPA as delineated in Section 78fff(a)(1)(B). A bankruptcy provision is "inconsistent" with SIPA if it conflicts with an explicit provision of the Act, or if application would substantially impede fair and effective operation of the Act without providing significant countervailing benefits. *SIPC v. Charisma Sec. Corp.*, 506 F.2d 1191 (2d Cir.1974). However, a

bankruptcy provision does not become "inconsistent" simply because it is not absolutely necessary for the operation of the Act. *Id.*

Application of Section 541(c)(1)(B) invalidates the automatic termination clause of the bond, thereby leaving coverage of the debtor intact. Since the purpose of the bond is to insure the debtor against dishonest acts, as occurred in the instant case, it is difficult to imagine how application of Section 541(c)(1)(B) could be deemed anything but consistent with SIPA, the purpose of which is to protect customers of securities brokerages.

NUFIC contends that Section 541(c)(1)(B) only applies to cases arising under Title 11. NUFIC cites the plain language of the statute which reads:

"... on the commencement of a case under this title or on the appointment of or taking possession by a trustee in a case under this title or a custodian...."

Given that the instant case arose under Title 15, NUFIC argues that Section 541 is inapplicable.

The plain language of the Bankruptcy Code indicates that while an application for liquidation is filed pursuant to Title 15 U.S.C. Section 78eee(a)(3), the liquidation process commences under Title 11 U.S.C. Section 362 of the Bankruptcy Code states in pertinent part:

"... an application filed under section 5(a)(3) of SIPA operates as a stay, applicable to all entities, of—(1) the commencement or continuation ... of process ... or other action or proceeding ... that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title."

Accordingly, this Court holds that Section 541(c)(1)(B) is applicable in the instant case, thereby invalidating the automatic termination provision of the bond.

### Executory Contracts

■ 11 U.S.C. Section 365(a) provides that a trustee may assume or reject any executory contract or unexpired lease of the debtor. Pursuant to Section 365(d)(1), a trustee has sixty days after the filing of the petition for relief within which to assume or reject an executory contract. Any contract not assumed during that period is automatically deemed rejected.

The Bankruptcy Code does not define an executory contract. However, the legislative history of Section 365 states that an executory contract is one in which performance remains due to some extent on both sides. H.R.Rep. No. 598, 95th Cong., 1st Sess. 347, *reprinted in* 1978 *U.S.Code Cong. & Admin.News,* 5787, 6303. Courts have frequently held that an executory contract is one in which:

[T]he obligations of both the bankrupt and the other party to the contract are "so far unperformed that failure of either to complete performance would constitute a material breach excusing the performance of the other."

Countryman, *Executory Contracts in Bankruptcy,* Part 1, 57 Minn.L.Rev. 439, 460 (1973), *cited in In re Arrow Air, Inc.,* 60 B.R. 117, 120 (Bankr.S.D.Fla.1986); *In re Charter Co.,* 52 B.R. 267, 270 (Bankr.M. D.Fla.1985).

Other courts have adopted the so-called "Functional" approach in determining whether a contract is executory. Under this approach, a court considers the purpose behind allowing the debtor or trustee to assume or reject a contract. As the court stated in *In re G–N Partners,* 48 B.R. 462, 465 (Bankr.Minn.1985), "the purpose of the provision allowing a trustee to assume or reject any executory contract or unexpired lease is to allow a trustee to pick and choose among the debtor's agreements and assume those which benefit the estate...." Likewise in *In re Norquist,* 43 B.R. 224, 225 (Bankr.Wash.1984), the court stated that "[r]ejection of an executory contract serves two purposes. It relieves the debtor of burdensome future obligations ... and it constitutes a breach of contract which permits the other party to file a creditor's claim."

The bankruptcy court determined that under either the "Countryman" approach (significant performance due on both sides) or the "Functional" approach (benefit of

assumption or rejection to the estate), the bond was not an executory contract. As such, the Trustee was not required to assume or reject the Bond within 60 days of filing the petition for relief. This Court finds that the bankruptcy court correctly analyzed the nature of the fidelity bond at issue in determining that it was not an executory contract.

Under the first approach, the so-called "Countryman" approach, the bond was not an executory contract because the obligations of both parties were not so far unperformed that failure of either to complete performance would constitute a material breach. There were no obligations under the bond on GSC's part for which failure to perform would constitute a material breach giving rise to a claim by NUFIC against GSC.

Under Florida law, fidelity bonds are considered to be insurance contracts, and insurance contracts have been held to be executory. *In re Evans Prods. Co.*, 91 B.R. 1003 (S.D.Fla.1988). However, the sole basis for determining that an insurance contract is executory has been the fact that the bankrupt had a continuing obligation to make premium payments under the contract. *In re Evans*, 91 B.R. at 1006; *In re Pester Refining Co.*, 58 B.R. 189, 191 (Bankr.S.D.Iowa 1985); *In re B. Siegel Co.*, 51 B.R. 159, 161 (Bankr.E.D. Mich.1985).

The facts of those cases differ from the instant case in one crucial respect. In the present case, the debtor paid the premium in full prior to issuance of the bond. The only remaining duties to be performed by GSC were duties necessary to initiate the filing of a claim of loss under the bond. GSC's failure to do so could not constitute a material breach giving rise to a claim by NUFIC against the estate. Rather, GSC's failure to perform those duties necessary to the filing of a claim could only benefit NUFIC, which would avoid liability to which it would otherwise be subject. Therefore, using the "Countryman" approach, the bond was not an executory contract.

Applying the second approach, the so-called "Functional" approach, the bond was not an executory contract. Under this approach, whether a contract is executory is determined by the benefits that assumption or rejection would produce for the estate. *In re Norquist*, 43 B.R. at 225. Using the "Functional" approach, the bond in the instant case is clearly not executory, since rejection could not have possibly benefitted the estate. In fact, if the Court were to find that the bond was an executory contract, and thus deemed rejected by the Trustee's failure to assume, the only party to benefit from this determination would be NUFIC, which would be relieved from liability under the bond. As the bankruptcy court correctly noted, GSC, as the insured, would have given up valuable, bargained-for protection against losses. Because a finding that the bond was executory would be detrimental to customers of GSC, such a finding would be clearly inconsistent with the stated purposes of SIPA.

Based on the above and foregoing, it is hereby

ORDERED AND ADJUDGED that the FINAL JUDGMENT of the bankruptcy court is AFFIRMED,

Done and ordered.