In re Brian Nelson DRAKE, Debtor.

Bankruptcy No. 90–17012–JNG.

United States Bankruptcy Court,
D. Massachusetts.

Jan. 29, 1992.

Stephen E. Shamban, Braintree, Mass., Chapter 7 Trustee.

Melvin S. Hoffman, Cherwin & Glickman, Boston, Mass., for Cape Cod Bank and Trust Co.

Joel B. Rosenthal, Shapiro Israel & Weiner, Boston, Mass., for objecting party.

· MEMORANDUM

WILLIAM C. HILLMAN, Bankruptcy Judge.

## I.  INTRODUCTION

The issue before the Court is whether an "Executive Employment and Non Competition Agreement" (the "Agreement") between Brian Nelson Drake ("Drake" or the "Debtor") and Drake, Swan & Crocker Insurance Agency, Inc. (the "Agency"), an insurance agency in which Drake had been an officer and shareholder, is an executory contract.  The Chapter 7 Trustee and the Cape Cod Bank and Trust Company (the "Bank"), to whom the Trustee wishes to sell his interest in the Agreement, contend that the Agreement is not executory, or, in the alternative, if it is executory, that it can be assumed and assigned by the Trustee to the Bank.[1]  The Agency objects to any sale, or assumption and assignment, on grounds that the Agreement is executory and has been rejected as a matter of law.[2]

## II.  FACTS

The parties have agreed to the pertinent facts.  The Debtor was a founder of the Agency and was one of its officers and shareholders prior to July 31, 1989.  The Debtor and the Agency entered into the Agreement on July 31, 1989 when the Debtor decided to terminate his role as an officer and shareholder.  Concomitantly, the Agency purchased Drake's stock.

The Agreement contains Drake's covenant not to compete with the Agency for a term of 60 months in exchange for which the Agency promised to pay to Drake or his designee $375,000, payable in 60 equal monthly installments, "commencing upon termination of his employment or upon his death, but not prior to August 1, 1991, and payable on the first day of the next succeeding 59 months during the duration of

1. Section 365(a) of the Bankruptcy Code provides in relevant part: "The trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."  11 U.S.C. § 365(a).

2. Section 365(d)(1) of the Bankruptcy Code provides:

In a case under chapter 7 of this title, if the trustee does not assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor within 60 days after the order for relief, or within such additional time as the court, for cause, within such 60–day period, fixes, then such contract or lease is deemed rejected.
11 U.S.C. § 365(d)(1).

the non competition period hereof." The Agreement also provides that:

> In the event of a breach or threatened breach by DRAKE of the provisions of this Agreement, the provisions of any paragraph hereof may be enforced by an injunction restraining DRAKE from the commission of such breach to the full extent hereof, or to such lesser extent as a court of competent jurisdiction may deem just and proper for the reasonable protection of the rights and interests of the AGENCY. Nothing contained herein shall be construed as prohibiting the AGENCY from pursuing any other remedies available to it for such breach or threatened breach including the recovery of money damages.

The Debtor's employment under the Agreement was terminated on September 26, 1990, two months before he filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On February 4, 1991, Drake, as debtor-in-possession, filed a motion for rejection of the Agreement to which the Bank and The First National Bank of Boston filed objections. That motion was withdrawn by the Debtor on March 6, 1991. Approximately two weeks later, the Debtor's Chapter 11 case was converted to Chapter 7. The Agency has not made any payments either to the Debtor or to the Trustee under the Agreement.

## III. DISCUSSION

The Trustee and the Bank argue that the Agreement is not an executory contract within the meaning of section 365 of the Bankruptcy Code. They advance several reasons including the following: 1) no material future performance under the Agreement remains on the part of the Debtor; 2) the only remaining obligation on the part of the Agency is the payment of money; 3) the Agreement is a disguised sales agreement; and 4) application of the so-called "functional approach" to the determination of whether the contract is executory compels the conclusion that the contract is not executory. They principally rely on the recent case of *In re Bluman*, 125 B.R. 359 (Bankr.E.D.N.Y.1991), in which the debtor,

Bluman, moved the court for an order directing the trustee to abandon a purchase and sale agreement and restraining the trustee from transferring or distributing any of the funds collected as a result of the agreement. As grounds for his motion, Bluman argued that the agreement was an executory contract which the trustee failed to assume.

The contract in *Bluman* provided for the sale by the debtor of all the intangible assets of his insurance business, including the name and goodwill of the business. The contract also contained a covenant by the debtor not to compete within a 25 mile radius of the business for a period of five years following the date of final payment, an undefined term in the agreement. The debtor was to assist the purchaser for a period of one year following the date the assets were transferred, and the purchaser was to pay the debtor a monthly amount pursuant to a formula set forth in the contract for the debtor's lifetime but in no event for less than ten years. The contract also outlined a remedy available to the purchaser for breach of the debtor's covenant not to compete. The language utilized between Bluman and the purchaser of his business, which was quoted by the bankruptcy court, is virtually identical to the language in the Agreement between Drake and the Agency.

The chapter 7 trustee in the *Bluman* case determined that the monthly payments being made to the debtor were property of the estate. He began collecting the monthly payments, a move which prompted Bluman's motion.

The New York court began its examination of the issue by referring to the seminal definition of an executory contract formulated by Professor Countryman: "[a] contract under which the obligation of both the bankrupt and the other party to the contract are so unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." Countryman, Executory Contracts in Bankruptcy: Part I, 57 Minn.L.Rev. 439, 460 (1973). In re-

sponse to the debtor's argument that material future performance obligations existed on both sides due to the purchaser's obligations to make monthly installment payments and the debtor's obligation not to compete, the court noted: "the parties did not state that a breach of the covenant not to compete would be deemed a material breach of the contract relieving the Buyer of its obligations. Even if such a provision were included, it is doubtful it would be enforced as it would probably result in a forfeiture." 125 B.R. at 362. Thus, the court, using the Countryman test, determined that Bluman's contract was not executory, since the debtor's future obligations did not rise to the level of material future performance.

Additionally, the New York court performed an analysis using the so-called functional approach to determine whether or not a contract should be deemed executory. Developed by the Court of Appeals for the Sixth Circuit in *In re Jolly*, 574 F.2d 349 (6th Cir.), *cert. denied*, 439 U.S. 929, 99 S.Ct. 316, 58 L.Ed.2d 322 (1978), the functional approach involves an evaluation of the purposes rejection is expected to accomplish, namely "1) taking advantage of contracts which will benefit the estate; 2) relieving the estate of burdensome contracts; 3) promoting the debtor' s fresh start; 4) permitting the allowance and determination of claims; and 5) preventing parties from remaining 'in doubt concerning their status vis-a-vis the estate.' " *In re Bluman*, 125 B.R. at 363, *citing In re Monument Record Corp.*, 61 B.R. 866, 868 (Bankr.M.D.Tenn.1986). In *Bluman*, the court determined that none of the sale agreement except the promotion and enhancement of the debtor's fresh start, which the court found would be a "boon to the debtor [that] should not come at the expense of creditors." 125 B.R. at 363.

The Bank and the Trustee reach the same conclusion in the case before this Court, particularly since the Debtor assigned his rights under the contract to The First National Bank of Boston and the Bank. With respect to their other arguments, the Trustee and the Bank suggest that the Agreement is a disguised buy-sell

agreement for tax purposes, and that the primary purpose of the Debtor and the Agency was the sale of the Debtor's interest in the Agency to the remaining shareholders. They also cite *Lubrizol Enterprises v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043 (4th Cir.1985), *cert. denied*, 475 U.S. 1057, 106 S.Ct. 1285, 89 L.Ed.2d 592 (1986), and *In re Sentle Trucking Corp.*, 93 B.R. 551, 556 (Bankr.N.D.Ohio 1988), for the proposition that a contract is not executory where the only remaining obligation is the payment of money. They note that the Agency's only obligation to the Debtor after his termination in September 1990 was the payment of $375,000. *See also, In re Structurlite Plastics Corp.*, 86 B.R. 922 (Bankr.S.D.Ohio 1988). In that case, the court stated: "when the debtor is owed money by another the debtor has a claim against that individual, but it is not treated as an executory contract." 86 B.R. at 927, *quoting In re Norquist*, 43 B.R. 224, 228 n. 2 (Bankr.E.D. Wash.1984).

The Agency vehemently opposes the position advanced by the Bank and the Trustee, although like them, it utilizes Countryman's definition of an executory contract. In support of its position that the Agreement is executory, the Agency cites a number of cases, including *In re Rovine Corp.*, 6 B.R. 661 (Bankr.W.D. Tenn.1980). In that case, the court noted that the term executory contract does not encompass contracts fully performed by the nonbankrupt party, where the debtor has only partially performed or not performed at all. Additionally, the court noted that the term does not cover contracts fully performed by the bankruptcy party, but not fully performed by the nonbankrupt party. 6 B.R. at 664 *citing* Countryman, 57 Min.L.Rev. 439, 451, 458 (1973).

In *Rovine Corp.*, *supra*, the court held that a franchise agreement between Burger King Corp. and the debtor was executory in nature because of the obligation on the part of Burger King to provide systems, services, trademarks, and cooperation in the operation of the franchised business, and the obligation on the part of the debtor to make royalty payments and

to refrain from competing during the term of the agreement and for a specified time thereafter.

The Agency attempts to distinguish *In re Bluman, supra,* with citations to *In re Cooper,* 47 B.R. 842 (Bankr.W.D.1985) and *In re Noco, Inc.,* 76 B.R. 839 (Bankr.N.D. Fla.1987). These cases hold, in the context of non competition agreements, that contracts are not executory where the non-bankrupt has no further obligations financial or otherwise to the debtor when the debtor's only obligation is not to compete. The Court is not persuaded that the cases cited by the Agency resolve the issue in its favor.

In *In re Gladding Corp.,* 22 B.R. 632 (Bankr.D. Mass.1982), the court observed:

> bankruptcy courts should not be bound by static definitions of what is an executory contract, but should strive to satisfy the purposes of the Act in conjunction with the goals of the debtor (or trustee), in order that equity may be served ... Countryman sets out only the threshold inquiry, and leaves for the courts further considerations to determine whether a contract is "trust executory". On that basis, Countryman serves more as an "exclusionary" rule rather that as the ultimate test of an executory contract.

22 B.R. at 635. The court clearly indicated that the functional approach just adopted by the court in *In re Jolly,* 574 F.2d 349 (6th Cir.), *cert. denied,* 439 U.S. 929, 99 S.Ct. 316, 58 L.Ed.2d 322 (1978) warranted consideration.

The Agreement at issue is simple. In sole consideration for the Debtor's covenant not to compete with the Agency for 60 months in a prescribed geographical area, the Agency agreed to make monthly payments of $6,250 to the Debtor. However, the contract does not contain the continuing mutual obligations necessary to constitute an "executory" contract. The Agency's obligation to pay money does not make the contract executory, *see In re Structurlite Plastics Corp.,* 86 B.R. 922 (Bankr.S.D. Ohio 1988), nor does the Debtor's obligation not to compete, *see In re Bluman,* 125 B.R. 359 (Bankr.E.D.N.Y.1991). Given

the primary purposes of rejection, relieving the estate of burdensome obligations while the Debtor is attempting to recover financially and affecting a breach of contract allowing the injured party to file a claim, it is clear that those purposes cannot be accomplished through rejection. Therefore, using the functional approach formulated by the Sixth Circuit in *In re Jolly,* 574 F.2d 349, 351 (6th Cir.), *cert. denied,* 439 U.S. 929, 99 S.Ct. 316, 58 L.Ed.2d 322 (1978), the conclusion is inescapable: the Agreement cannot be deemed executory. Rejection of the contract would arguably relieve the Agency of its payment obligation and the Debtor of his covenant not to compete, but rejection would be prejudicial to the creditors of the bankruptcy estate. Despite the agency's attempts to distinguish *In re Bluman,* 125 B.R. 359 (Bankr.E.D.N.Y.1991), the Court finds its rational dispositive. *See also, Matter of Sapse,* 31 B.R. 914 (Bankr. S.D. Fla.1983). Accordingly, the Court need not address the alternative arguments proffered by the Bank and the Trustee or the Agency's arguments relative to the timeliness of the Trustee's motions to extend the time within which to assume or reject the contract.

In view of the foregoing, the Trustee's motion for authority to sell is allowed.