**In re WANG LABORATORIES, INC., Debtor.**

**Bankruptcy No. 92–18525–WCH.**

United States Bankruptcy Court, D. Massachusetts, E.D.

April 5, 1993.

See also 149 B.R. 1.

390

ruary 15, 1993. He would thereafter receive severance benefits payable monthly through September 30, 1994.

4. While the termination date in the Agreement is February 15, 1993, it provides that

"[D]uring the last two months of your employment (December 16, 1992 to February 15, 1993) you will ... not be expected to report to work ... and may have the benefit of any 'outplacement' services as are generally available to employees of the Company during such period."

5. Wang filed its original petition in this case on August 18, 1992.

6. The present motion was filed January 21, 1993.

Louis A. Goodman, Skadden, Arps, Slate, Meagher & Flom, Boston, MA, for debtor.

Peter L. Zimmerman, Richard L. Blumenthal, Silverman & Kudisch, P.C., Boston, MA, for Herbert S. Holzman.

## DECISION ON MOTION TO REJECT HOLZMAN CONTRACT

WILLIAM C. HILLMAN, Bankruptcy Judge.

The Debtor ("Wang") seeks to reject its employment agreement with Herbert S. Holzman ("Holzman") pursuant to 11 U.S.C. § 365(a). This is a core proceeding, 28 U.S.C. § 157(b)(2). Wang asks that the rejection be effective as of February 8, 1993.

By agreement of the parties, the matter was submitted to the Court for consideration upon the pleadings and memoranda.

### Findings of Fact

1. Prior to August 3, 1992, Holzman was the president of a Wang subsidiary.

2. On that date he entered into an employment agreement with Wang itself (the "Agreement").

3. The Agreement provided that Holzman would be employed through Feb-

### Issues Raised

Wang argues that the Agreement was an executory contract "at all times relevant to the Motion." If the Court should find otherwise, it seeks a ruling that any claim which Holzman may have under the Agreement is a general unsecured claim under the principle announced in *Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.)*, 536 F.2d 950, 954 (1st Cir. 1976).

Holzman's response is that the contract is not executory, and thus not subject to rejection. He regards the relevant date as the date of the filing of the motion to reject, or, perhaps, a later date when his counsel first received notice of the motion.

### Discussion and Conclusions of Law

 As of the time the present motion was filed, Holzman was no longer required to perform services for Wang. All that remained under the Agreement was the payment of severance pay.

This remnant of performance is even less than that which the Court held to be a nonexecutory contract in *In re Drake*, 136 B.R. 325 (Bankr.D.Mass.1992). In *Drake* the outstanding elements were a noncompetition agreement and periodic payments therefor. The time for determination of

the executory nature of the contract was not at issue in that case.

Accordingly, if the time of the filing of the motion (or, indeed, any time after December 16, 1992) is the operative point at which to determine whether the Agreement is executory, the Court would find that it is not executory. Nothing remained but the payment of money. *Drake, supra,* at 328.

If, on the other hand, some date on or about the date of filing is the relevant reference point, we are drawn into the Countryman–*In re Jolly* discussion that fills so much of the *Drake* opinion.

The analysis is complicated by the small amount of actual authority addressing the issue, although dicta abounds. For example, Wang quotes the following language from a First Circuit decision: "The debtor may assume a contract that was executory as of the date of filing. . . ." *Corporacion de Servicios Medicos Hospitalarios v. Mora (In re Corporacion de Servicios Medicos Hospitalarios),* 805 F.2d 440, 447 (1st Cir.1986). From this Wang concludes that the date relevant to rejection as well as assumption is the date of filing. This argument is not convincing. The contract in that case was not scheduled to expire until seven years after the filing, and long after the motion to assume was filed; the quoted language is dicta.

Holzman counters with *In re Drexel Burnham Lambert Group, Inc.,* 138 B.R. 687 (Bankr.S.D.N.Y.1992), and three cases cited in that opinion, *Gloria Mfg. Corp. v. ILGWU,* 734 F.2d 1020 (4th Cir.1984); *In re Pesce Baking Co.,* 43 B.R. 949, 957 (Bankr.N.D.Ohio 1984); and *Camp v. National Union Fire Ins. Co. (In re Government Securities Corp.),* 101 B.R. 343, 349 (Bankr.S.D.Fla.1989).

*Drexel* itself is not relevant. In that decision Judge Conrad specifically rejected the form of analysis which this Court adopted in *Drake* in favor of the Westbrook–Andrew thesis.[1] The Court agrees with Judge Conrad that the present law is a "bramble-filled thicket," *Drexel* at 690, but does not believe that the views of the

good professors get us out of the woods. The devil one knows may be better.

The other three cases are actually cited in *Drexel* as examples of the generally accepted theory of analysis, which they are. However, they do support Holzman's position.

In *Gloria,* the contract expired by its terms after filing but before the attempted rejection. The Fourth Circuit held that the motion to reject had been mooted by the expiration. This supports the view that the date of the attempted assumption or rejection is the relevant date. *Gloria* has been followed by one decision in this Circuit. *In re Boricua Motors Corp.,* 77 B.R. 358, 362 (D.P.R.1987).

*Pesce* and *Camp* are basically to the same effect, holding that "the critical date for determining the executory nature of a contract is the date on which the bankruptcy court considers the debtor's application." *Pesce,* 43 B.R. at 957. The Court is persuaded by the reasoning of those cases.

The Court holds that the the determination of whether a contract is executory is to be made not at the time of filing, but at the time that the issue is before the Court. No decision need be made in this case as to whether that point is the date of the filing of the motion or of service or of hearing, since the contract was non-executory under *Drake* at all of those times.

■ Having determined that the contract was not executory, consideration must turn to the nature of Holzman's damages for breach. As noted above, Wang would have the Court declare them to be a general unsecured prepetition claim under *Mammoth Mart.* Holzman uses other language from the case, 536 F.2d at 955, n. 4, to support his view. The Court finds that neither correctly reflects the actual holding of the case.

In *Mammoth Mart,* the affected employees were terminated eleven days after the filing. The pre-petition policy of the debtor, it was claimed, was to pay severance

---

1. Westbrook, *A Functional Analysis of Executory Contracts,* 74 Minn.L.Rev. 227 (1989); Andrew, *Executory Contracts Revisited: A Reply to Professor Westbrook,* 62 U.Colo.L.Rev. 1 (1991).

pay of one week's salary for each year of service without a limit. The employees had worked for the company for more than four years but only received severance pay of four weeks. The suit was for the excess. The Court of Appeals upheld the lower court's findings that the plaintiffs did indeed have claims for the excess severance and that those claims were not entitled to priority. In reaching its conclusion the Court reasoned as follows:

> "It follows that whether a claim for severance pay based upon an unrejected contract with the debtor ... will be entitled to § 64(a)(1) [now § 507(a)(1)] priority will depend upon the extent to which the consideration supporting the claim was supplied during the reorganization.... Since no part of [the employees'] present claims arise from services performed for the debtor-in-possession, no portion of appellant's claims may receive § 64(a)(1) priority."

536 F.2d at 955.

In the present case, the contract was executed only fifteen days prior to the date upon which Wang filed its original petition. Virtually all of the services rendered were during a period in which Wang was operating as debtor-in-possession. There is no suggestion that the services rendered were not beneficial to Wang. As said in *Mammoth Mart:*

> "When third parties are induced to supply goods or services to the debtor-in-possession pursuant to a contract that has not been rejected, the purposes of § 64(a)(1) [now § 507(a)(1)] plainly require that their claims be afforded priority."

536 F.2d at 954.

■ Holzman is entitled to a claim with the priority specified in 11 U.S.C. § 507(a)(1). *Mammoth Mart* left open the question "whether the amount of the priority will be determined by the contract price or by the reasonable value of the services that have been provided." 536 F.2d at 984, n. 3. No suggestion has been made that the services rendered during Holzman's period of active employment by Wang were not worth the entire compensation package afforded him under the Agreement.

The Court finds that Holzman is entitled to his priority claim in the amount of the salary, severance pay and value of benefits which he was to receive under the Agreement and which remain unpaid or unprovided. This is consistent with the treatment of the *Mammoth Mart* precedent in *In re Armorflite Precision, Inc.,* 48 B.R. 994 (D.Me.1985).

An appropriate order will enter.

This decision does not establish a principle that a prepetition contract performed in part after the filing is entitled to an administrative expense claim. The result is fact driven, and each case must be examined individually. *See Mammoth Mart* at 954 n. 4.

### ORDER

This matter came on for hearing upon the motion of the Debtor to reject its employment agreement with Herbert S. Holzman. For the reasons stated. in the accompanying decision:

1. The motion is denied.

2. Holzman is awarded an administrative claim with the priority provided by 11 U.S.C. § 507(a)(1) in the amount of the salary, severance pay, and the value of benefits which he was to receive under the employment agreement which remain unpaid.