In re SPECTRUM INFORMATION TECHNOLOGIES, INC., Dealer Services Business Systems, Inc. and Spectrum Cellular Corporation, Debtors.

Bankruptcy Nos. 195–10690–260, 195–10692–260 and 195–10693–260.

United States Bankruptcy Court,
E.D. New York.

March 20, 1996.

Cleary Gottlieb Steen & Hamilton, New York City by George Weisz, for debtors.

Jeffrey M. Rosenblum, P.C., Great Neck, New York, for John Marchione.

Mayer Brown & Platt, New York City, by Raniero D'Aversa, Jr., for Spectrum Creditors Committee.

*DECISIONS ON (i) DEBTORS' MOTION FOR AN ORDER APPROVING RE-JECTION OF JOHN MARCHIONE'S EMPLOYMENT AGREEMENT and (ii) APPLICATION BY JOHN MAR-CHIONE FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE CLAIM*

CONRAD B. DUBERSTEIN, Chief Judge.

The matters before the Court are (i) the Debtors' motion for an order pursuant to section 365 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 6006 [1] approving their rejection of John Marchione's ("Marchione") employment agreement and (ii) a dispute concerning the priority status of a severance pay claim filed by Marchione. Marchione was the former president of Computers Unlimited of Wisconsin, Inc. d/b/a Computer Bay ("Computer Bay"), a subsidiary of Spectrum Information Technologies, Inc. ("Spectrum").

After hearings held and due deliberation and consideration of the facts and issues raised herein, for the reasons hereinafter set forth, (i) Debtors' motion for an order approving rejection of Marchione's employ-

---

1. Unless otherwise indicated, subsequent chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* and to the Federal Rules of Bankruptcy Procedure, Rules 1001 *et seq.*

ment agreement is denied; (ii) Marchione's application for allowance and payment of his severance pay claim as an administrative expense claim under section 503(b)(1)(A) entitled to priority treatment under section 507(a)(1) is granted.

## FACTS

Spectrum is a publicly held corporation that is the corporate parent of the other two captioned Debtors, Dealer Services Business Systems, Inc. d/b/a Data One ("Data One") and Spectrum Cellular Corporation ("Cellular") (collectively the "Debtors" and hereinafter referred to interchangeably as "Spectrum" and "Debtors"). Spectrum is engaged, through its subsidiaries, in the business and development of wireless data transmission technology and in other technology-related business activities.

On January 26, 1995, as a result of substantial financial losses and expenses incurred in the defense of securities related investigations and litigation, the Debtors and Computer Bay filed their respective petitions for relief under chapter 11 of the Bankruptcy Code. These chapter 11 cases were consolidated for procedural purposes only and were being jointly administered pursuant to orders of this Court. Thereafter, by order dated May 25, 1995, Computer Bay was converted from chapter 11 to chapter 7. Thus, the Debtors' cases are no longer procedurally consolidated with the Computer Bay case and the estate of Computer Bay is being liquidated under the supervision of a chapter 7 trustee.

On May 1, 1994, prior to the filing of the petitions, Spectrum and Marchione entered into an employment agreement ("Employment Agreement") pursuant to which Marchione was hired as president of Computer Bay for a stated term of eighteen months.[2] The Employment Agreement provided for compensation based upon the following: (a) a base salary of $125,000 per year; (b) re-

imbursement of ordinary and necessary business expenses; (c) $700 per month automobile allowance; and (d) health-related benefits.[3] Notably, as of January 26, 1995, the date of filing, Computer Bay had ceased operations. Nevertheless, Marchione continued to be employed by Spectrum because, according to it, at that time there was a prospect of reopening Computer Bay's operations by the Computer Bay Creditor's Committee. When it became clear that Computer Bay's operations would not resume, Spectrum sought Marchione's assistance with other aspects of its businesses.[4]

The Employment Agreement contained a provision governing liability in the event of termination of the Agreement by either party.[5] Specifically, in the event of voluntary termination by Marchione, or termination by Spectrum "with just cause," Marchione would receive the base salary and benefits described above through the date of the notice of termination. However, if terminated "without just cause," Marchione would receive his base salary and benefits for a period equal to the number of full calendar months for which he had been employed, but not shorter than six months (if he was employed for fewer than six months) and not longer than the period ending on the 18 month termination date of the Employment Agreement, i.e., October 31, 1995.

On March 23, 1995, approximately two months post-filing, and with approximately seven months remaining under the term of the Employment Agreement, Marchione was involuntarily terminated by Spectrum. Marchione received full compensation through March 31, 1995. On April 30, 1995, he received two weeks salary in addition to compensation for unused vacation time.

Marchione argues that his post-petition termination was an incident of the administration of Spectrum's estate and that the severance pay he is entitled to under the

---

**2.** *See* May 1, 1994 Employment Agreement, annexed to Marchione's Application for Allowance and Payment of Administrative Claim as Exhibit "A."

**3.** *Id.* at ¶ 4(a)–(d).

**4.** *See* Debtors' Objection to Application of John Marchione for Allowance and Payment of Administrative Claim, dated June 30, 1995, at 4.

**5.** *Id.* at ¶ 7.

Employment Agreement is an expense of administration entitled to priority. On May 31, 1995, Marchione filed the instant Application for Allowance and Payment of Administrative Claim seeking payment as an administrative priority expense of $118,948.37 [6] under section 503(b)(1)(A) ("Marchione's Application").

Additionally, as part of Spectrum's efforts to reorganize and refine its operations to, among other things, improve profitability, Spectrum's management determined that the continued employment of certain key employees, including Marchione, who were providing services that were deemed nonessential was neither necessary nor in the best interests of the Debtors, their estates and creditors, and chose to terminate their employment.

On June 23, 1995, approximately five months post-filing and three months after it terminated Marchione, Spectrum moved this Court for an order approving its rejection of Marchione's Employment Agreement in addition to certain other employment and separation agreements. Marchione objected to Spectrum's rejection motion on the grounds, *inter alia*, that the Employment Agreement is not an "executory contract" as defined in section 365 and, therefore, not subject to rejection. Alternatively, Marchione claimed that notwithstanding the technical act of rejecting an employment contract under section 365(a), which gives the non-debtor party a claim for damages for breach of the contract relating back to the date of the filing of the petition,[7] under prevailing Second Circuit case law, hereinafter discussed, severance pay claims arising under rejected employment contracts are nevertheless entitled to administrative expense priority. Therefore, Marchione requested that should this Court deem the Employment Agreement an executory contract and authorize its rejection, such post-petition rejection not prejudice his administrative expense priority claim for severance pay.

In light of Marchione's Application, the parties stipulated to sever the issue of whether Marchione's Employment Agreement is executory and rejectable from Spectrum's omnibus motion and have it addressed and determined in the context of Marchione's Application. *See In re Spectrum Information Technologies, Inc.*, 190 B.R. 741 (Bankr. E.D.N.Y.1996).

Spectrum objected to Marchione's Application on both legal and factual grounds including, *inter alia*, (i) an objection to the calculation of the dollar amount of Marchione's claim; (ii) an objection as to whether or not Marchione was terminated without cause; and (iii) an objection to the claim's entitlement to administrative priority status.[8]

The parties subsequently reached an agreement with respect to all issues with the exception of the legal question now before this Court, namely, whether Marchione's claim for severance benefits arising under the Employment Agreement is entitled to administrative priority status under the Bankruptcy Code or whether such claim constitutes a general unsecured prepetition claim.[9]

## DISCUSSION

### REJECTION OF MARCHIONE'S EMPLOYMENT AGREEMENT

■ Section 365(a) governs the assumption or rejection of "any executory contract or unexpired lease" of the debtor. 11 U.S.C. § 365(a). The significance of rejection of an executory contract is that it not only relieves the estate of burdensome future obligations but it also gives rise to a prepetition general unsecured claim for damages rather than an

---

**6.** The parties have subsequently stipulated that "Marchione is entitled to an allowed claim for severance benefits pursuant to the terms of the Employment Agreement in the amount of $75,-000." *See* December 28, 1995 Stipulation and Order, ¶ 1.

**7.** *See* 11 U.S.C. §§ 365(g)(1), 502(g).

**8.** *See* Debtors' Objection to Application of John Marchione for Allowance and Payment of Administrative Claim, dated June 30, 1995.

**9.** *See* Stipulation and Order By and Between Spectrum Information Technologies, Inc. and John Marchione, so ordered by this Court on December 28, 1995.

administrative expense priority. 11 U.S.C. §§ 365(g), 502(g).

The option to assume or reject is limited to contracts that are executory. Although not defined by the Code, the definition proffered by Professor Vern Countryman is widely accepted, to wit, a contract is executory for purposes of applying section 365 if the "obligations of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." Vern Countryman, *Executory Contracts in Bankruptcy, Part I,* 57 Minn.L.Rev. 439, 460 (1973).

The significant date for determining whether a contract is executory is initially at the time when the petition is filed. *Collingwood Grain, Inc. v. Coast Trading Co., Inc. (In re* Coast Trading Co.), 744 F.2d 686, 692 (9th Cir.1984). However, "events after the filing ... may cause the contract to be regarded as not executory when the motion to assume or reject was made, such as contracts which expired post-petition by their own terms after the date of [filing] but before the motion was heard." *In re Child World,* 147 B.R. 847, 852 (Bankr.S.D.N.Y. 1992); *see In re Wang Lab., Inc.,* 154 B.R. 389, 391 (Bankr.D.Mass.1993); *Camp Nat'l v. Union Fire Ins. Co. of Pittsburgh (In re* Government Sec. Corp.), 101 B.R. 343, 349 (Bankr.S.D.Fla.1989) (citations omitted) *aff'd,* 111 B.R. 1007 (S.D.Fla.1990), *aff'd,* 972 F.2d 328 (11th Cir.1992), *cert. denied,* 507 U.S. 952, 113 S.Ct. 1366, 122 L.Ed.2d 744 (1993). The rationale of these decisions stems from the widely accepted Countryman definition that an executory contract is one under which substantial performance remains on *both* sides.

Spectrum elected to file its motion to reject Marchione's Employment Agreement five months after filing and three months after Marchione was terminated. Although the Agreement may have been executory on the filing date herein, January 26, 1995, at the date of Debtors' motion to reject, June 23, 1995, Marchione no longer had any material unperformed obligations under the Employment Agreement. Indeed, the sole remaining obligation on Marchione's part was compliance with a "non-interference with contractual relationship" clause for two years after his termination. Such a continuing duty has been found by this Court to be a contingent obligation not rising to the requisite level of materiality necessary to be considered executory under section 365(a). *See In re Spectrum Information Technologies, Inc.,* 190 B.R. 741, 750 (Bankr.E.D.N.Y.1996) (citations omitted).

The only discernable future obligation was Spectrum's duty to make severance payments to Marchione. This type of obligation is insufficient to deem the Employment Agreement executory. *See In re Wang Lab.,* 154 B.R. at 390 (employment agreement not executory where employee no longer required to perform services and only remaining obligation was the payment of severance pay); *In re Chateaugay Corp.,* 102 B.R. 335, 345 (Bankr.S.D.N.Y.1989); *In re Structurlite Plastics Corp.,* 86 B.R. 922, 926 (Bankr. S.D.Ohio 1988).

Thus, the Employment Agreement does not contain the requisite material future obligations on both sides and, therefore, is not an executory contract under the Countryman definition.

The application of the result-oriented functional approach for determining whether a contract is subject to assumption or rejection is equally nonavailing. Under the functional approach, the focus is upon whether or not the estate will benefit from assumption or rejection of the contract rather than looking at mutuality of commitments. *In re Child World,* 147 B.R. at 851 (citing Jay Lawrence Westbrook, *A Functional Analysis of Executory Contracts,* 74 Minn.L.Rev. 227, 282– 283 (1989)). Spectrum will not benefit from a rejection of Marchione's Employment Agreement because rejection would only permit Spectrum to breach the Agreement entitling Marchione to a claim for general unsecured *prepetition* damages. 11 U.S.C. § 365(g). However, an exception to the prepetition status of a claim arises if the claim relates to a post-petition actual and necessary expense of administration. 11 U.S.C. § 503(b)(1). A determination of whether

Marchione's claim for severance pay is entitled to priority requires an administrative expense analysis under section 503(b)(1)(A) and the existing judicial authority regarding the priority treatment of such claims.

### SEVERANCE PAY AS AN ADMINISTRATIVE EXPENSE

■ Section 507(a)(1) provides that "[f]irst [priority is given to] administrative expenses allowed under section 503(b) of this title . . . ." 11 U.S.C. § 507(a)(1). According to section 503(b)(1)(A), administrative expenses include the "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case." 11 U.S.C. § 503(b)(1)(A).

Based upon the foregoing statutory mandate, employment-related benefits such as severance and vacation pay have been deemed to be forms of "wages" which may be entitled to administrative expense priority if incurred during the administration of a bankruptcy case. *Straus–Duparquet, Inc. v. Local Union No. 3 Int'l Bhd. Elec. Workers,* 386 F.2d 649, 651 (2d Cir.1967); *In re Golden Distributors, Ltd.,* 134 B.R. 760, 763 (Bankr. S.D.N.Y.1991) *aff'd* 152 B.R. 35 (S.D.N.Y. 1992) (citing *In re Schatz Fed. Bearings Co., Inc.,* 5 B.R. 549, 552 (Bankr.S.D.N.Y.1980)).

However, this Court recognizes that a dichotomy exists among those courts addressing the issue of priority treatment of severance pay claims. The First, Third and Ninth Circuits have held that severance pay is subject to administrative expense priority only when such payment is due an employee in lieu of notice of termination, or to the extent to which the claim is earned post-petition.[10] Under that view, severance pay based upon an employee's length of service, such as in the instant matter, is prorated with the portion earned post-petition entitled to administrative expense priority and the remainder treated as a general unsecured claim.

Conversely, the Second Circuit holds that the right to severance pay arises on the date of termination and that the entire amount is entitled to administrative expense priority under section 507(a). *In re W.T. Grant Co.,* 620 F.2d 319 (2d Cir.) *cert. denied,* 446 U.S. 983, 100 S.Ct. 2963, 64 L.Ed.2d 839 (1980); *In re Unishops, Inc.,* 553 F.2d 305 (2d Cir. 1977); *Straus–Duparquet, supra; see also Trustees of Amalgamated Ins. Fund v. McFarlin's Inc.,* 789 F.2d 98 (2d Cir.1986) (following *W.T. Grant, Unishops* and *Straus–Duparquet* ).

■ The Second Circuit has reasoned that "severance pay is compensation for the hardship which all employees, regardless of their length of service, suffer when they are terminated and that it is therefore 'earned' when the employees are dismissed." *See Trustees of Amalgamated Ins. Fund,* 789 F.2d at 104 (citing *W.T. Grant,* 620 F.2d at 320–321; *Unishops,* 553 F.2d at 308; *Straus–Duparquet,* 386 F.2d at 650–651). Thus, since severance pay is not earned daily, it cannot be apportioned as to prepetition and post-petition portions. *Straus–Duparquet,* 386 F.2d at 651. If the employee's termination occurs after the filing of the bankruptcy petition, severance pay accrues totally in the post-petition period and, accordingly, "it is granted a first priority as a cost of doing business during the bankruptcy proceeding." *Trustees of Amalgamated Ins. Fund., supra.*

Here, Marchione's Employment Agreement provided that if he was terminated at any time, for other than cause, he would be entitled to severance pay measured by the length of his employment. At the time of termination, March 23, 1995, Marchione was entitled to a severance payment equal to his monthly base salary and benefits for each month he had been employed, limited by the remaining term of the Agreement, i.e., seven months.[11]

---

**10.** *See In re Roth Am., Inc.,* 975 F.2d 949, 957 (3d Cir.1992); *Lines v. System Bd. of Adjustment No. 94 Bhd. of Ry. (In re* Health Maintenance Found.), 680 F.2d 619, 621 (9th Cir.1982); *Cramer v. Mammoth Mart, Inc. (In re* Mammoth Mart, Inc.), 536 F.2d 950, 952 (1st Cir.1976); *In re Public Ledger Inc.,* 161 F.2d 762, 773 (3d Cir.1947); *see also; In re Rawson Food Servs.*

Inc., 67 B.R. 351, 353 (M.D.Fla.1986); *In re Uly-Pak, Inc.,* 128 B.R. 763, 764 (Bankr.S.D.Ill.1991).

**11.** *See* May 1, 1994 Employment Agreement, annexed to Marchione's Application for Allowance and Payment of Administrative Claim as Exhibit "A," at ¶ 7.

Despite the fact that a portion of this amount was based upon Marchione's employment prior to the filing of these petitions, as indicated above, Second Circuit precedent holds that severance pay, although calculated on the basis of length of employment, is not earned until the time of termination and, therefore, when termination occurs post-petition, the severance payment is a cost of carrying on business constituting an administrative expense entitled to priority. *W.T. Grant, supra; Unishops, supra; Straus–Duparquet, supra.*

Relying upon the foregoing Second Circuit rulings, Marchione asserts that the legal issue of his entitlement to administrative priority status for his severance pay claim is a settled point of law and, therefore, the doctrine of *stare decisis* mandates this Court's adherence to the binding precedent of the Court of Appeals for the Second Circuit.

In opposition, Spectrum claims that *stare decisis* does not mandate treating Marchione's claim as an administrative expense due to factors justifying a departure from the otherwise controlling precedents of the Second Circuit. Spectrum asserts that the cases Marchione relies upon were instituted when the Bankruptcy Act of 1898 controlled, rather than the Bankruptcy Code. Additionally, Spectrum cites to contrary law in other circuits as well as two opinions authored by bankruptcy judges in the Southern District of New York in accord therewith.[12]

However, for the following reasons, this Court does not believe it is justified in departing from the precedents set down by the prior decisions of the Second Circuit.

Although *Straus–Duparquet, Unishops* and *W.T. Grant* were decided under section 64(a)(1) of the Bankruptcy Act of 1898, in a case governed by the Code, the Second Circuit repeated its position that a severance pay claim constitutes an administrative expense when the employee is terminated post-petition. In *Trustees of the Amalgamated Ins. Fund, supra,* decided in 1986, notwithstanding the holding that a debtor's withdrawal liability under the Multi–Employer Pension Plan Amendments Act was not an administrative expense claim,[13] the Court, citing *Straus–Duparquet, Unishops,* and *W.T. Grant,* stated that "[its] decision [was] not inconsistent with cases holding that a bankrupt's obligation to pay severance pay, which arises out of the termination of an employee during bankruptcy, is an administrative expense entitled to priority." *Id.* at 104. Thus, the Court's long-standing posture on severance pay remains the law of the Second Circuit.

Indeed, in affirming the decision of the late Bankruptcy Judge Howard Schwartzberg that severance pay claims of non-union employees constitute administrative expenses where the termination occurs after the filing date even though the calculation of such pay was based, in part, upon prepetition services, Chief Judge Brieant of the District Court for the Southern District of New York explained

---

**12.** *See In re Hooker Invs., Inc.,* 145 B.R. 138 (Bankr.S.D.N.Y.1992) (holding *stare decisis* does not require following *Straus–Duparquet* and its progeny blindly in light of changes in the governing law); *Cohen v. Drexel Burnham Lambert Group, Inc. (In re* Drexel Burnham Lambert Group, Inc.), 138 B.R. 687 (Bankr.S.D.N.Y.1992) (same). It is to be noted that neither of the foregoing decisions were subject to appellate scrutiny.

**13.** After ceasing operations, the debtor in *Trustees of the Amalgamated Ins. Fund* was obligated to make an additional lump sum payment, known as a "withdrawal liability," to fund its employees' share of pension benefits already earned by its employees in a multiemployer pension plan. In addressing the issue of whether this withdrawal liability payment should be entitled to administrative expense priority or treated as a general unsecured claim, the Court held that

withdrawal liability would be entitled to administrative expense priority "only if it arises out of a transaction between the creditor and the ... debtor-in-possession and 'only to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor-in-possession in the operation of the business.'" *Trustees of the Amalgamated Ins. Fund.,* 789 F.2d at 101 (quoting *In re Mammoth Mart, Inc.,* 536 F.2d 950, 954 (1st Cir.1976) (citation omitted). The Court distinguished a withdrawal liability payment as the "means by which the employer funds benefits that his employees have 'earned' by their past service ..." whereas severance pay is "'earned' when the employees are dismissed," and, therefore, entitled to a "first priority as a cost of doing business during the bankruptcy proceeding." *Trustees of the Amalgamated Ins. Fund,* 789 F.2d at 104.

in *Metropolitan Distribution Servs., Inc. v. Local 153 OPEIU* (*In re* Golden Distributors, Ltd.), 152 B.R. 35 (S.D.N.Y.1992), as follows:

> The Bankruptcy Judge believed that the Court was bound by clear Second Circuit case law, to the effect that severance pay, in its entirety, is entitled to first priority administrative expense status for the reason that severance pay is compensation for the event of termination and unlike wages, does not accrue on a per diem basis, citing *Straus–Duparquet, Inc. v. Local Union No. 3 IBEW*, 386 F.2d 649, 650 (2d Cir. 1967) followed in Code cases such as *Trustees of Amalgamated Insurance Fund. v. McFarlin's, Inc.*, 789 F.2d 98 (2d Cir.1086). That other Circuits may have decided differently is, as the Bankruptcy Judge correctly noted, of little concern to the resolution of the matter.

*Id.* at 36–37.

The foregoing Code cases contradict Spectrum's assertion that the enactment of the Bankruptcy Code has eroded the applicability of *Straus–Duparquet* and its progeny. Moreover, the fact that under the prior law debtors were not required to assume executory contracts subject to court approval has no impact upon the treatment of Marchione's claim. Relying upon that premise, Spectrum cites to *In re Hooker Invs., Inc.*, 145 B.R. 138 (Bankr.S.D.N.Y.1992) in which the bankruptcy court departed from the directives of *stare decisis* by referring to, *inter alia*, changes in the governing law, and posited that "[t]he only way to preserve a debtor's freedom of choice and maintain the flexibility and equity which are built into Chapter 11 is to hold that the right to receive individually-negotiated contract termination payments in full hinges on actual assumption . . ." of the contract. *Id.* at 150.

■ This Court disagrees. As noted by the Second Circuit in *Unishops*, 553 F.2d at 308 and most recently by Circuit Judge Guido Calabresi in *Nostas Assocs. v. Costich* (*In re* Klein Sleep Prods., Inc.), 78 F.3d 18 (2d Cir.1996):

> [I]t [is] well-established in this Circuit that administrative priority [is] available *either* if the trustee assumed an executory contract *or* if the estate received demonstra-

ble benefits under that contract. *American Anthracite & Bituminous Coal Corp. v. Leonardo Arrivabene, S.A.*, 280 F.2d 119, 124 (2d Cir.1960) (Lumbard, C.J.) ("The claim of a creditor having an executory contract with the debtor at the time the debtor's petition is filed is entitled to priority under these provisions only if the trustee or debtor in possession elects to assume the contract *or* if he receives benefits under it.") (emphasis added). . . .

*Id.*

By seeking Marchione's continued employment post-petition, Spectrum received the benefits of his expertise and services during the administration of the estate. Although Marchione was duly paid for his services, under the terms of the Employment Agreement, the value of the benefits conferred by Marchione included the indirect compensation of severance payments which, as suggested by the Second Circuit, is intended to compensate employees for the hardships attributable to termination and is earned when the employee is dismissed.

Based upon the facts of this case and the mandates of the Second Circuit granting administrative expense priority to severance pay claims including its rules governing benefits to the estate, this Court holds that Marchione's severance pay claim is entitled to the status of an administrative expense entitled to priority under section 507(a)(1).

## CONCLUSIONS

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and 157(b)(2)(O).

2. The Debtors' motion for an order approving rejection of John Marchione's Employment Agreement is denied.

3. John Marchione is awarded an administrative expense claim under 11 U.S.C. § 503(b)(1)(A) entitled to the priority provided by 11 U.S.C. § 507(a)(1) in the amount of $75,000.00 which amount was previously agreed to by the parties.

SUBMIT AN ORDER IN CONFORMITY WITH THIS OPINION.