**In re LEIBINGER–ROBERTS, INC., Debtor.**

**Bankruptcy No. 188–80609–260.**

United States Bankruptcy Court, E.D. New York.

Oct. 5, 1989.

Parker, Chapin, Flattau & Klimpl, New York City, for debtor; Joel Lewittes, of counsel.

Haight, Gardner, Poor & Havens, New York City, for Paul Leibinger; Donald J. Kennedy, and Alan Heblack, of counsel.

Schwartz, Sachs & Kamhi Carle Place, N.Y., for Creditors' Committee; Gary Sachs, of counsel.

Finkel, Goldstein, Berzow & Rosenbloom, New York City, for Wayne Fulton; Harold Berzow, of counsel.

CONRAD B. DUBERSTEIN, Chief Judge.

The within proceeding is a motion brought by Wayne Fulton ("Fulton"), a minority shareholder, director, and officer of the debtor corporation for an order directing the debtor to assume or reject a certain shareholders' agreement ("agreement") affecting him pursuant to § 365(d)(2) of the Bankruptcy Code. It is the debtor's position that the agreement is not an executory contract as to the debtor and therefore, there is no obligation under 11 U.S.C. § 365 to make such an election. For the reasons set forth hereafter, we conclude: 1) the shareholders' agreement is not an executory contract at this juncture, and 2) the motion to compel the debtor to assume or reject same is denied.

## FACTS

The debtor herein, Leibinger–Roberts, Inc. ("the debtor" or "Leibinger–Roberts") was formed in 1978 by Gunther Leibinger ("Leibinger") and Fulton by the merger of their respective companies, Paul Leibinger, Inc. and Heller Roberts Instruments Corp. for the purpose of manufacturing and distributing numbering machines. Leibinger received 51% of the stock in the new entity and the remaining 49% was issued to Fulton.

In connection with the merger of these corporations, three documents were executed: a shareholders' agreement between Leibinger and Fulton; an employment agreement wherein the services of Fulton were engaged by the debtor as Chief Executive Officer; and a distributorship agreement wherein the debtor would have the exclusive right to sell the products of Leibinger Gimbl & Co., KG, a German company controlled by Gunther Leibinger, in North America.

The shareholders' agreement is the subject of the instant motion. Entered into on October 31, 1978 between Fulton and Leibinger, its terms include the following provisions in general:

1. That the Board of Directors of the debtor would consist of three directors, two of whom would be nominees of Leibinger and a third would be a nominee of Fulton;

2. That Leibinger and Fulton agree to cause Leibinger to be Chairman of the Board and Fulton to be President and Chief Executive Officer;

3. That the debtor would be the exclusive distributor in the United States and Canada of all products produced by Leibinger Gimbl & Co. KG;

4. That certain corporate matters require the unanimous consent of the shareholders;

5. The granting of preemptive rights;

6. That if Fulton receives a bonafide offer for his shares, Leibinger individually and the debtor shall first have the right to purchase the shares at a price set forth in the agreement as the "Adjusted Agreed Value" ($1.5 million plus or minus 49% of the after tax earnings or losses of the debtor as measured from the date following the consummation of the merger to the last day of the monthly accounting period preceding the calendar month in which notice of the offer is received or termination of the association occurs).

7. That upon the termination of the association between Fulton and the debtor, whether caused by death, retirement, sickness, mental or physical incapacity, termination of Fulton's employment, or for any other reason, the debtor would purchase Fulton's 49% interest for the "Adjusted Agreed Value".

Looking to the shareholders' agreement itself, the introductory paragraph of the agreement provides:

Agreement made the 31st day of October, 1978, between WAYNE FULTON ("Fulton") and GUNTHER LEIBINGER ("Leibinger").

Moreover, the agreement is signed solely by Leibinger and Fulton. Under these signatures there is an endorsement which reads:

We concur in and agree to be bound by the terms of this Agreement insofar as they relate to Leibinger–Roberts, Inc.

LEIBINGER–ROBERTS, INC.

BY s/ Wayne Fulton
President

Prior to the filing of its Chapter 11 petition, the debtor attempted to terminate Fulton's employment pursuant to the employment agreement. A great deal of litigation has ensued in the state court between Fulton and Leibinger, much of which is unresolved to date. The employment agreement was thereafter assumed by the debtor, presumably so as not to trigger the termination clause in the shareholders' agreement which would obligate the debtor to redeem Fulton's shares.

It is apparent at this juncture, that the termination of Fulton's employment is imminent. A liquidating Chapter 11 plan has been proposed by the creditors' committee which is presently ripe for confirmation. Under the plan, the assets of the debtor will be sold to Atlantic Control Inc. ("Atlantic") in a sale already approved by this court although subject to the confirmation of the plan in accordance with *Committee of Equity Holders v. Lionel Corp. (In re Lionel Corp),* 722 F.2d 1063 (2d Cir.1983).

The terms of the sale include payment of all administrative claims in the Chapter 11 and payment of all unsecured claims in full with interest at nine percent. Additionally, Atlantic agrees to pay $1.375 million dollars above and beyond the satisfaction of all the foregoing which, pursuant to the plan, will be put in escrow for the shareholders pending the resolution of their dispute. Coincidentally, $1.375 million is the exact amount that allegedly will be due to Fulton upon his termination under the terms of the shareholders' agreement as fixed by the "Adjusted Agreed Value" in the event he is successful in the state court action. It should be noted that Fulton has supported the sale from the inception of the offer.

## DISCUSSION

The issue herein revolves around whether the shareholders' agreement, to which the debtor agreed to be bound, is an executory contract as to which the debtor-in-possession may be obligated to make an election prior to confirmation of the plan whether it should be assumed or rejected.

Section 365(a) of the Bankruptcy Code provides that, "the trustee, subject to the court's approval, *may* assume or reject any executory contract ..." (emphasis added). If the trustee or debtor-in-possession (pursuant to 11 U.S.C. § 1107(a)) does not make such an election, the other party to the contract may compel the trustee to make a determination as to whether to assume or reject. 11 U.S.C. § 365(d)(2). This is the subject of Fulton's motion here. The debtor responds that the shareholders' agreement is not an executory contract, therefore it is not required to make an election.

■ This court finds that although the shareholders' agreement as adopted by the debtor may have been an executory contract at one time, the present facts of the case including the sale of the debtor's assets to Atlantic and the inevitable termination of Fulton's employment upon the consummation of the sale, has changed the nature of the agreement so that it can no longer be deemed executory as it relates to the debtor. When a debtor cannot reap any present or future benefits from a contract due to a change in circumstance, the contract's life as an executory contract comes to an end and the contract becomes unilateral and enforceable against the parties in the absence of a valid defense.

The term "executory contract" is not defined in the Code but courts have repeatedly utilized a well known definition attributed to Vern Countryman, the respected authority on contract and bankruptcy law, that an executory contract is, "a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." Countryman, Executory Contracts in Bankruptcy: Part I, 67 Minn.L.Rev. 439, 460 (1973). The legislative history of § 365 similarly states that the term executory contracts "generally includes contracts on which performance remains due to some extent on both sides." H.R.Rep. No. 595, 95th Cong., 1st Sess. 347 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 58 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5844, 6303. These obligations must require material future performances by both parties. *In re Chateaugay Corp.*, 102 B.R. 335, 345 (Bankr.S.D.N.Y.1989).

If these definitions are to be stretched, it becomes evident that all contracts could be considered executory. It is a rare agreement that does not involve unperformed obligations on both sides. *Mitchell v. Streets (In re Streets & Beard Farm Partnership)*, 882 F.2d 233 (7th Cir.1989). Even a note payable could be looked at as executory because the note holder must tender the note in exchange for payment. This is clearly not the intent of Congress. To determine whether an agreement is executory one must look at the facts and circumstances surrounding the agreement in light of the purposes of § 365. *In re Gladding Corp.*, 22 B.R. 632, 635 (Bankr. Mass.1982).

■ ■Section 365 is intended to allow a debtor to escape onerous and burdensome contracts in which the obligations of the debtor far exceed any possible benefit to the estate. Once a contract is found to be executory, it is incumbent upon the debtor to pass the "business judgment test" in order to demonstrate that the contract will benefit the estate as a condition to allow it to assume or reject the contract. *In re Tilco, Inc.*, 558 F.2d 1369 (10th Cir.1977); *In re Anglo Energy Ltd.*, 41 B.R. 337 (Bankr.S.D.N.Y.1984). Examining the shareholders' agreement between Leibinger and Fulton, it appears that there is no present benefit running to the debtor which would call for its assumption. It has no interest in monitoring the ownership of these shares. The only parties that benefit from the instant shareholders agreement are Fulton, who has a market for his shares, and Leibinger who assures himself of not having to deal with an outside shareholder. According to the debtor, it has no interest in Fulton's future performance of the shareholders' agreement. Furthermore, it is Leibinger, not the debtor, who benefits from the purchase of Fulton's shares pursuant to the shareholders' agreement because Leibinger would then become

sole shareholder of the debtor corporation. Nor can the debtor reject its obligation to guaranty payment of the monies due Fulton upon the termination of his association with the debtor in accordance with the terms of the agreement which it consented to. As with an indebtedness on a note, there is no "business judgment" to be made.

The movant relies primarily on the case of *Johnson v. Fairco Corp.*, 61 B.R. 317 (N.D.Ill.1986) which held that a shareholder's duty to tender his shares of stock and the debtor's duty to redeem the shares pursuant to a stock redemption agreement were duties of material future performance which made the agreement executory within the meaning of § 365. It is important to note that in *Fairco* the Court found that redemption of the shares would have greatly prejudiced the general unsecured creditors, and equity demanded that the debtor-in-possession should not be compelled to pay the redemption value ahead of the interests of various creditors. Therefore the Court concluded that inasmuch as it found that an executory contract existed it approved its rejection because its provisions were onerous and burdensome to the estate.

This court believes that the decision in *Fairco* was justified in the context of the facts involved there but does not believe it is applicable here by reason of the facts present in this case. In the case at bar, the plan of reorganization which is well on the road to confirmation, contemplates that the purchaser of the debtor's assets will pay all creditors in full with interest and additionally pay the equity holders $1.375 million which will arguably go to Fulton upon his termination. Under these circumstances, it matters little whether: 1) the agreement is assumed and passes through confirmation of the plan, with the $1.375 million to be distributed upon the termination of the state court dispute, or 2) the agreement is rejected thereby creating for Fulton an unsecured claim which would be paid in full in accordance with the plan based upon the Atlantic offer which already has been approved by this Court. As no equity considerations lie with a finding that the share-holders' agreement is executory, as was found in *Fairco*, this court will uphold what is perceives to be one of the purposes behind § 365, that is, whether contracts are a burden or a benefit to the estate and how they should be treated by the bankruptcy court.

Interestingly enough, this is not a motion by the debtor to reject a burdensome contract, but rather a motion by the minority shareholder to compel assumption or rejection of a contract which the debtor has no choice but to reject under the "business judgment test" in order to avoid payment of an obligation it agreed to be bound by pursuant to its endorsement of the agreement. To permit this would be unconscionable as to Fulton and contrary to the debtor's obligations as required by its undertaking. Moreover, the debtor's right of first refusal to purchase Fulton's stock, which might normally have benefitted the estate, is virtually lost to it as a result of the sale which extinguishes the shareholders' rights other than to share in the fund created for the shareholders. Since there is no benefit to the debtor in assumption or rejection, the "business judgment test" cannot be applied. A bankruptcy court must not allow third parties to manipulate the bankruptcy laws enacted for the benefit of debtors and their creditors, for their own purposes. It should be noted that the rigorous opposition to this motion interposed by the debtor is directed from Leibinger, the majority shareholder, rather than from the debtor, as the debtor has virtually no pecuniary interest in the outcome of the motion.

 The debtor suggests that the subject contract is not executory because the agreement confers no future benefits to the debtor's estate and therefore the obligation of the debtor could be likened to a guarantee or a promissory note, both of which have repeatedly been held to be non-executory. *In re Adolphsen*, 38 B.R. 776, 778 (Bankr.D.Minn.1983). *Accord, Horton v. Rehbein (In re Rehbein)*, 60 B.R. 436, 440 (Bankr. 9th Cir.1986); *In re Booth*, 19 B.R. 53, 62 (Bankr.D. Utah 1982). The general rule is that a contract is not executory where the only obligation of a party

to a contract is the payment of money. *In re Chateaugay Corp.* 102 B.R. at 344–45. The debtor also analogizes the shareholders' agreement to a guaranty agreement. A guaranty agreement is not executory because it holds no future benefit for the guarantor. *In re Unishops, Inc.*, 422 F.Supp. 75, 76 (S.D.N.Y.1975), *aff'd*, 543 F.2d 1017 (2d Cir.1976); *In re Grayson–Robinson Stores, Inc.*, 321 F.2d 500, 502 (2d Cir.1963); *Van Dyk Research Corp. v. SCM Corp. (In re Van Dyk Research Corp.)*, 13 B.R. 487 (Bankr.N.J.1981).

Although the debtor's analogies are persuasive, this court realizes that instruments of the type represented by the subject shareholders' agreement are extremely individualized and must be looked at in the context of their own facts and circumstances. Even though the shareholders' agreement in this case is more similar to a promissory note or a guaranty, inasmuch as the debtor's primary obligation is to tender payment of the shares to Fulton, there are other benefits and obligations that run to the parties including structure and control of management and preemptive rights. The issue arises as to whether these are material obligations or simply *de minimis.* This court concludes that there are no material obligations or benefits running to the debtor at the present time.

In support of his motion, Fulton lists four obligations flowing to the debtor from himself as provided for in the agreement which he claims are not *de minimis:* 1) Preemptive rights, 2) Leibinger's and the debtor's right of first refusal for the purchase of the Fulton's stock, 3) the debtor's right to purchase Fulton's stock upon his termination, and 4) the inclusion of the debtor's address in the agreement's provision which sets forth official addresses for notices and other purposes. The first three obligations confer little benefit to the estate and primarily benefit the other shareholders. The fourth is not an obligation and confers no benefit to the debtor. This court finds that the aforementioned obligations are *de minimis* as to the debtor. Furthermore, as stated above, the sale of assets to Atlantic nullifies these purported benefits to the debtor. For this reason, we

further conclude that this agreement cannot be executory as there is no material benefit flowing to the debtor.

Fulton seems to concur with the foregoing analysis, as he himself states that whether the shareholders' agreement holds future benefits to the debtor is largely irrelevant due to the fact that general creditors will receive a 100% dividend with interest, regardless of whether the underlying agreement is deemed executory. This response is one of the reasons why this Court finds that the shareholders' agreement, under the instant facts, is non-executory. The debtor, in furtherance of its duties as a debtor-in-possession under § 1107 of the Bankruptcy Code, has no interest in assuming *or* rejecting this shareholders' agreement at this stage in the case because neither action will help to continue its business, aid in the formulation of a plan, or enlarge the estate for the benefit of its creditors.

A further argument by Fulton is that the shareholders' agreement must be read in conjunction with the employment contract and when the two are read together the existence of an executory contract is clearly evident. Contrary to Fulton's contention, the shareholder's agreement and the employment agreement are not mutually dependent. Fulton's argument fails for two reasons.

Firstly, the parol evidence rule precludes admission of extrinsic evidence outside the four corners of the shareholders' agreement since the contract is a complete integration and it is not ambiguous. *See, U.S. v. Wallace & Wallace Fuel Oil Co., Inc.*, 540 F.Supp. 419, 426 (S.D.N.Y.1982). Additionally, the presence of a merger clause in the shareholders' agreement stating that the shareholders' agreement constitutes the entire agreement between the parties is conclusive that the agreement is a complete integration. *See, Id.; Katz v. American Technical Industries, Inc.*, 96 A.D.2d 932, 466 N.Y.S.2d 378 (1983). The parties drafted and signed three separate agreements, setting forth in great detail and length, the terms of each. The specificity with which their provisions are set out leads to the

conclusion that the shareholders' agreement is a complete integration. *See, Gianni v. R. Russel & Co.,* 281 Pa. 320, 126 A. 791 (1924); *Higgs v. DeMaziroff,* 263 N.Y. 473, 189 N.E. 555 (1934).

Secondly, even if parol evidence were admitted to determine that the parties intended the two agreements to be mutually dependent as some courts allow under limited circumstances, *Bloor v. Shapiro,* 32 B.R. 993 (S.D.N.Y.1983), Fulton's argument would still fail since examination of both the employment agreement and shareholders' agreement shows that the nature and purpose of the agreements are different. The shareholders' agreement governs the relative rights of the shareholders. The employment agreement, on the other hand, governs employment of Fulton as the president of the corporation, and his duties and compensation as such. Both contracts are based on separate consideration and both would stand in the absence of the other. The employment agreement does not require Fulton to terminate his position as president of the debtor in the event that he receives an offer to sell his shares. Nor does the third party step into Fulton's shoes as a party to the employment agreement. Furthermore, the employment agreement states that Fulton's breach of the non-competition clause does not alter the debtor's obligations under the shareholders' agreement. Based on the foregoing, the obligations of the debtor and Fulton under the two agreements are not interrelated for purposes of Section 365.

### CONCLUSION

The present posture of this case as reflected by the facts and circumstances surrounding the instant application support the conclusion that the shareholders' agreement is not an executory contract which requires assumption or rejection by the debtor in accordance with the provisions of 11 U.S.C. §§ 365(a) and 365(d)(2). Accordingly, Fulton's motion to compel the debtor to assume or reject the shareholders' agreement is denied. This decision is without prejudice to renewal at a future date if and when there is a change in conditions with respect to the sale of the debtor's assets and the confirmation of the plan presently before this Court.

An Order consistent with this opinion was signed by the undersigned on September 27, 1989.